MCMAHON *et al. vs.* THE MAYOR, ETC., OF SAVANNAH.

City laws requiring the registration of voters at municipal elections, providing for the manner thereof, the giving of certificates of registration and the keeping of lists, and authorizing the presiding magistrates to administer an oath that the voter has registered, are not in conflict with the constitutional provisions prescribing the general qualifications of voters. These municipal laws do not add new qualifications to the voter, but are regulations designed to secure the duty citizens may owe the municipal government and to protect the purity of the ballot.

(*a*). There is no violation of the constitution in the act of the legislature whereby the authorities of the city of Savannah are allowed to collect and apply to constitutional objects the poll-tax of municipal voters.

Municipal corporations. Constitutional law. Elections. Before Judge FLEMING. Chatham Superior Court. December Term, 1880.

Reported in the decision.

GEO. A. MERCER; A. P. & S. B. ADAMS, for plaintiffs in error.

J. R. SAUSSY; H. C. CUNNINGHAM, for defendants.

SPEER, Justice.

McMahon *et al.* filed their bill in Chatham superior court, alleging that they are citizens of the city of Savannah, and of the county and state aforesaid, are tax-payers of said city, and some of them owners of taxable property in said city to a large amount.

They also allege that they are duly qualified and entitled to vote at elections for mayor and aldermen of said city. They show that the constitution of the state of Georgia declares that every male citizen of the United States, twenty-one years of age, who has resided in the state one year next preceding the election, and six months in the county in which he offers to vote, and shall have paid all taxes required of him, and which he may have had an opportunity of paying agreeably to law, except for the year of the election, shall be deemed an elector. That said constitution further provides, that the general assembly may provide from time to time, for the registration of all electors, that laws of a general nature shall have uniform operation, and that no special law shall be enacted in any case for which provision has been made by an existing general law, that local and private acts passed for the benefit of cities, not inconsistent with the supreme law nor with said constitution, shall have the force of statute law, and that all legislative acts in violation of said constitution are void.

Complainants allege that the mayor and aldermen of the city of Savannah, claim the right to add to the qualifications of an elector provided by the constitution of Georgia as aforesaid, the additional qualifications for an elector, at general elections for mayor and aldermen in

said city that such voter shall have made all legal returns required by the ordinances of said city, and shall have been registered according to law.

Complainants further allege that said defendant, through its officers and agents, and particularly through its clerk of council, is now engaged in enforcing against your orators, and other citizens and tax-payers, said illegal qualifications and requirements, claiming the right to do so under the charter of said city, as amended by an act of the general assembly of Georgia, approved August 7th, 1872; said act provides that said clerk shall open a list for the registration of voters, to remain open from the first Monday in July until the first Monday in December, till 2 o'clock, P.M. It is made the duty of such clerk, upon the application in person, and not by proxy, of any person entitled to vote in said city, as required by said city charter, and by said defendant, to register the name of such person, age, occupation or business, and place of residence; and further, the applicant shall pay to such clerk, for the city treasurer, the sum of one dollar in lieu of poll-tax, and shall receive from said clerk a certificate of his registration, upon the production of which he shall be entitled to vote, and not otherwise. And further, said clerk may, in any case, administer an oath to the applicant, touching his right to be registered. Said clerk is required to publish a list of the names in one of the gazettes of the city of Savannah; also, to affix said list at the Court House door, and Exchange, and to furnish the magistrates presiding at the election for mayor and aldermen, a list of the names as aforesaid.

And said magistrates are authorized to administer to any person attempting to vote an oath containing, among other things, the averment that such voter has duly registered as aforesaid, which it is alleged differs essentially from the oath prescribed for voters by the constitution of Georgia. It is further alleged that said registration and production of said certificate are made essential

qualifications of the right to vote, and that any person voting or attempting to vote, who is not so qualified is subjected to a criminal prosecution, and subjected to be committed instantly, by the presiding magistrate, to the common jail.

It is further charged that said election law is manifestly inconsistent with the constitution of Georgia, and prescribes qualifications for electors not authorized in said constitution, and that said provisions have been repealed by said constitution ; and said law will disfranchise lawful voters under the constitution, and deprive them of their right to vote.

Notwithstanding the facts set forth, the said defendants and their clerk, are now engaged in carrying out said illegal requirements, and insist that before any legal voter under the constitution of Georgia can be allowed to vote at the approaching election for mayor and aldermen, to be held in said city of Savannah on the third Tuesday in January next, he must first register his name, pay a registration tax, be prepared to exhibit his certificate of registration, and to take the oath as aforesaid. It is further alleged that the defendants cannot legally collect the poll tax and pay the same into the city treasury. Complainants insist that they and all other voters and taxpayers, will be subjected to annoyance and expense of a criminal prosecution, if they insist upon their rights as electors under said constitution ; that the said officers of said city who superintend and manage the election are without means, and could not respond in damages to your orators for refusing to receive their votes.

Further, it is averred, to prevent a multiplicity of suits, and to obtain adequate relief and protection, a resort to equity is necessary.

That they are property owners and tax-payers, interested in the legal and proper appropriation of all moneys in the city treasury ; that defendants have no right to use

public moneys contributed by tax-payers to carry out any such illegal act; that carrying out this act is causing great expense in publishing, printing, purchasing books, etc., and that large sums are being misappropriated' for this illegal purpose.

Complainants charge an open violation of said law of registration—that many of said applicants do not, and are not required to, pay said clerk the registration tax; certificates are not being delivered by said clerk as required by said act, but parties desiring to control the result of the coming municipal election have been and are still presenting names of persons alleged by them to be qualified voters, and said clerk is filling up certificates of registration, without requiring them to pay the registration fee, with the view and intention of delivering the same at some future day, prior to said election, not to said applicants, but to parties so furnishing said names. It is alleged said practice is contrary to the manifest spirit and intention of said act, and leads to gross frauds and to the defeat of the popular will.

The prayer is not only for a *subpœna*, but also for an injunction directed to defendants, its officers and agents, and to the clerk, enjoining them and each of them from further carrying out, or attempting to enforce or carry out in any way, said illegal election law and system of registration; from printing books and tickets and lists of said registered persons, and from expending any of the public moneys in carrying out said law, etc., and from furnishing to managers who will preside at said elections any list of the names of registered persons, and to restrain the delivery of any certificates of registration in the hands and control of defendants, etc.

To this bill defendants filed a general demurrer, and also their separate answers, which it is not necessary for our purpose we should set forth.

The bill, with the affidavits, answers, exhibits, etc., was submitted to the consideration of the presiding Judge,

on application for an injunction, and who refused said injunction and passed the following order : " On the hearing upon the rule to show cause why an injunction should not issue this day had, it being the opinion of the court that the city registration law is valid and constitutional and still of force, upon this ground alone, and without passing upon the effect of the affidavits submitted, it is considered and ordered by the court that the injunction be, and the same is hereby, denied and refused."

To which decision complainants excepted and assign the same as error.

It will be seen from the judgment pronounced by the court below, he limits it strictly to the question made as to the constitutionality and present force and validity of the registration law as referred to in complainants' bill, and against the enforcement of which the injunction was sought, and in our review of said decision we alone feel called upon to review the judgment pronounced and excepted to.

" All legislative acts in violation of the constitution are void, and it is the duty of the judiciary so to declare." But in considering and passing upon the question of the constitutionality of a law, the rule is too well established and settled to be departed from, " that it must be made to appear that the statute, before it is declared inoperative for that cause, must be '*plainly* and *palpably*' in violation of the constitution." 8 *Ga.*, 210.

Again, " The solemn act of the government will not be set aside by the courts in a doubtful case." The incompatibility or repugnancy between the statute and the constitution must be " *clear and palpable.*" 9 *Ga.*, 253.

Guided by this rule, we are to inquire whether these registration laws complained of are " plainly and palpably " in violation of the constitution of 1877.

The constitution declares : " That every male citizen of the United States (except as hereinafter provided) twenty-one years of age, who shall have resided in the State

twelve months next preceding the election, and shall have resided six months in the county in which he offers to vote, and shall have paid all taxes which may hereafter be required of him, and which he may have had an opportunity of paying agreeable to law, except for the year of the election, shall be deemed an elector."

Further, in article 12, paragraph 4, of the same instrument, it is provided: "That local and private acts passed for the benefit of counties, cities, etc., not inconsistent with the supreme law, nor with this constitution, and which have not expired, nor have been repealed, shall have the force of statute law."

It is insisted by the plaintiffs in error that the registration acts complained of are inconsistent with and violative of the constitution in this: that they impose upon the elector in the municipal elections "*qualifications*" not required by the provision of the constitution quoted. And hence, that the said registration acts are void, and their enforcement ought to be enjoined. It might be gravely questioned, whether the framers of the constitution intended to apply the qualifications therein prescribed to those who vote in municipal elections. But it is not necessary we should decide this question, in the view we take of this case.

1. It is complained that the registration acts require, in addition to the qualifications prescribed by the constitution, also that the electors shall have made all returns required by the ordinances of said city and that shall have been required according to law.

2. That a tax of one dollar was required to be paid in lieu of poll-tax.

3. They were required to take an oath before the clerk.

4. The clerk was required to publish a list of those registered and to furnish lists to the presiding magistrates.

These, it is contended, are additional qualifications prescribed that are violative of the constitution.

These, in our opinion, are statutory regulations designed

to secure the discharge of duties citizens may owe the municipal government and to protect the purity of the ballot. It is adding no new qualification "and is constitutional if it does not amount to a denial or evasion of the right conferred by the constitution."

The new requirement of a *registration* has been held not to be the addition of a qualification " to an elector." Cooley Const. Law, 601 ; 28 Iowa, 267 ; 12 Pick, 485 ; 4 Iowa, 304. It is but a means of carrying out the registration law, and is strictly in unison with its purposes, which are to provide for the proper designation and ascertainment of a voter in municipal elections. While it may not be, and is not, in the province of the legislature to prescribe a new *qualification* for an elector, it certainly is within the scope of their authority to regulate the *mode* and *manner* of conducting elections, for the purpose of securing a fair and legal result at the ballot-box.

If it is not competent for the legislature to provide *regulations* for the conduct and management of municipal elections—*beyond requiring the electors to be clothed with the constitutional qualifications*—then there would be an end of all municipal government, for every qualified voter of the county could vote at the municipal election. If registration is a new qualification, as is contended for, so would *residence* in the corporate limits be, and each be violative of the constitution. To surrender the municipal governments of the state to the consequences of such a construction of our constitution would be effectually to destroy them.

We cannot see how the registration acts of the city may not be consistent with the power granted the legislature to pass a general law on the subject of registration, as contained in the constitution. The mere grant of this power generally, we cannot see how it repeals the power once exercised in behalf of the city of Savannah. Municipal corporations form an exception to the rule which

forbids the legislature to delegate any of its powers to subordinate subdivisions. Restraints on the legislative power of control must be found in the constitution of the state or they must rest alone in the legislative discretion. If the legislative action in these cases operates injuriously to individuals, the remedy is not with the courts. They have no power to interfere, and the people must be looked to to right, through the ballot box, all their wrongs. Cooley, 192–3, 167; 5 *Ga.*, 194; 2 Rawle, 374; 8 *Ga.*, 210–16; 16 *Ib.*, 102.

The imposition of a poll-tax of one dollar, to be paid at the time of registration, is simply the payment of the usual poll-tax due by the citizen, and which the state allows the city government to collect through its officials· and for which the state gets credit in the distribution of the school fund to Chatham county. It is a tax *imposed by the state*, for educational purposes, and collected by city officials under this local law enacted by the general assembly.

In any view we can take of this amendatory act of 1872, of the charter, we can see no antagonism between it and those provisions of the constitution "prescribing the qualifications of electors," and seeing no inconsistency between these enactments and the constitution, we do not see "why this local law enacted for the benefit of the city" of Savannah, "not being inconsistent with the supreme law, or with the constitution," and not having expired, or been repealed, "is not of full force as statute law," as the constitution declares.

Whatever may have been the evidence before the court of the wrongs and frauds alleged to have been perpetrated upon the tax-payers of the city by the enforcement of these registration acts, we can only say the court below pronounced no judgment on the issues therein presented, and we are not called upon to review the same.

We can only add that the legislature, and not the courts, are invested with the discretion of determining

what laws are promotive of the public morality, or otherwise, and so long as those laws are not "*plainly* and *palpably*" violative of the constitution, the courts must recognize and uphold them.   Such abuses. must be corrected by an appeal to the people at the ballot-box—courts have nothing to do with the wisdom, policy or expediency of a law.   These are matters purely of legislative deliberation and cognizance.

Let the judgment of the court below be affirmed.