STATE ex rel. TRAVIS N. HARRIS v. GEORGE N. SCARBOROUGH.

*Election—Registration—Constitution—Voters.*

1. While the General Assembly cannot add to the qualifications prescribed by the Constitution for voters, it has the power, and it is its duty, to enact such registration laws as will protect the rights of duly qualified voters, and no person is entitled to vote until he has complied with the requirements of those laws.

2. Where there has been no registration at all, the votes cast cannot be counted by proving that none but duly qualified electors voted; possibly this principle might be relaxed where a fraudulent conspiracy to deprive the voters of the right of suffrage is shown; and it does not apply where the Legislature has failed to provide means for registration.

3. Where a voter offers to comply with the laws in reference to registration, but is prevented by the wrongful conduct of the registrar, his vote should be received and counted, but a vote cast upon an invalid registration should be rejected.

4. The provision in the statute (ch. 287, § 3, Laws of 1889) that no registration shall be valid unless it specifies, as near as may be, the age, occupation; residence, etc., of the elector, is in conformity with the Constitution and is mandatory in its terms, and he who seeks to vote without complying therewith must show that he offered to do all that was required of him and was prevented by the fault of the registration officers.

5. A response to the inquiry as to the place of birth and residence of the voter, giving the name of the *county* is sufficient compliance with the statute in that respect, but a response giving only the name of the *State* is too indefinite, and a registration thereon is invalid.

6. Where it appeared that the registrar read to each person applying to register the inquiry printed at the head of the columns of the registration books furnished him, he discharged his duty in that respect, and it was the duty of the elector to make his response sufficiently specific to meet the purposes of the law.

This is a CIVIL ACTION in the nature of a *quo warranto* to try the title to the office of Register of Deeds for Montgomery

County, tried before *Graves, J.*, at the June, 1891, Special Term of MONTGOMERY Superior Court.

. The registration for Bean's Mill precinct in Ophir Township, and Little River precinct in Little River Township, was assailed by defendant, and the registration books were introduced for that purpose. The registration book for Bean's Mill precinct, in the column under the head " Place of birth," and on the line opposite the name of the voter registered, had simply as the place of birth of the voter " North Carolina," and in the column under the head of "Place of residence" " Montgomery County," and in the column under the head of "Name of township or county from whence removed," as the place from which the voter had removed, simply " Ophir," and there was evidence tending to show (and the evidence was uncontradicted) that the registrar, at the time the voter appeared for registration and registered, read to the person so registered the said headings of the columns in the form of interrogatory, and the voter gave answer corresponding to said entries exactly as the entries were made. To all of which evidence plaintiff objected ; objection overruled, and exception by plaintiff.

The registration book for Little River precinct and Little River Township, in the column in said book under the head of "Place of birth" had, opposite the name of the voter as his place of birth, simply the name of the county in which he was born, and in the column for "Place of residence" simply Montgomery County, and there was uncontradicted evidence that the registrar read the headings of said columns in the form of interrogatory to the applicant for registration, and the voter answered precisely as the entries aforesaid were made in the said columns. Plaintiff objected to said evidence ; objection overruled, and there was exception.

A number of votes in Troy Township were assailed, and for that purpose the registration book was introduced by defendant. Said registration book showed in the column

under the heading in said registration book, " Name of township or county from whence removed," a blank, no entry at all.

And the registrar was introduced, and testified that he read the said heading to the persons registering in the form of interrogatory, and the person so registering made no answer to the question so asked, and that the said persons had, since the preceding election, moved to Troy Township for residence. Plaintiff objected to this evidence; objection overruled, and exception.

It is admitted by the pleading in the cause that there was " an entirely new registration " had in pursuance of law in the entire county for the election here in controversy. At the close of the evidence, the Court stated that he should charge the jury that the registrations aforesaid were not sufficiently specific to meet the requirements of the registration law, section 2676 of *The Code*, as amended in 1889, and that such registration was invalid, and the votes of the voters so registered should not be counted in determining the result of the election in controversy, unless such omissions and want of specific statements in respect to place of birth, place of residence and place from whence removed were not the fault of the voter, but were the fault of the registrar. That is, if the voter himself gave answers to the inquiries of the registrar as aforesaid corresponding to entries aforesaid, and said nothing to cause said entries to be made specific, then, it not being the fault of the registrar, but his own, the registration would be invalid, and the votes should not be counted.

To this ruling of his Honor the plaintiff excepted, and in deference to the intimation aforesaid by his Honor, the plaintiff, after excepting, submitted to judgment of nonsuit and appealed. It is admitted that if the said assailed registration is omitted from the count of votes, the plaintiff cannot recover.

In respect to said registration the plaintiff contended that the following clause in the election law, § 2676, to-wit: "No registration shall be valid unless it specifies, as near as may be, the age, occupation, place of birth, place of residence of the elector, as well as the township or county from whence the elector has removed, in the event of removal, and the full name by which the voter is known" has been substantially complied with in regard to the matter assailed; and that the provisions of said statute should be treated as directory, it not appearing that the voters assailed were not otherwise disqualified;" and he further contended that if the Legislature intended such law to be mandatory the same is unconstitutional, for that, in effect, it imposes qualifications for an elector in addition to those imposed by the Constitution, and such law is not authorized by the section of the Constitution empowering the Legislature "to provide for the registration of all electors."

*Mr. J. A. Lockhart*, for plaintiff.
*Messrs. W. C. Douglass* and *T. J. Shaw*, for defendant.

AVERY, J.: After declaring who should be qualified electors, Art. 6 of our State Constitution makes it obligatory upon the Legislature to guard against the fraudulent usurpation of the elective franchise, in the following explicit language: "It shall be the *duty* of the General Assembly to provide, from time to time, for the registration of all electors, and *no person shall be allowed to vote without* registration," etc. Const., Art. 6, §§ 1 and 2.

In obedience to this injunction of the organic law, and in the exercise of the legal discretion incident to the power given them, the Legislature provided (Laws of 1889, ch. 287, § 3), as follows: "*No registration shall be valid unless it specifies, as near as may be, the age, occupation, place of birth, place of residence* of the elector, as well as the township or county

from whence the elector has removed, in event of removal, and the full name by which the voter is known."

It is now well settled that Legislatures acting under such grants of power, may enact registration laws for the purpose, both of preventing those not entitled to vote from enjoying the privilege, and of securing the right of suffrage to the qualified electors; though they have no power to add to their constitutional qualifications. Cooley's Const. Lim. (6 Ed.) p. 756; *Kiveen* v. *Wells*, 144 Mass., 497; *McMahon* v. *Mayor*, 66 Ga., 217. •

If a statute appears upon its face to have been framed with the intent to prevent fraudulent registration, or in case of failure to accomplish that object, at all events to detect and punish the crime of illegal voting, it is within the purview of the law-making power to pass it. Every presumption is in favor of its validity and of the good faith of the body that enacted it. *State* v. *Moore*, 104 N. C., 717; *Powell* v. *Commissioners*, 114 Penn. St., 265; *State* v. *Eaves*, 106 N. C., 752; *Brown* v. *Brown*, 103 N. C., 213; *Randall* v. *Railroad*, 107 N. C., 752.

Judge COOLEY, says: "All such reasonable regulations of the constitutional right which seem to the Legislature important to the preservation of order in elections *to guard against fraud,* undue influence and oppression, and to *preserve the purity* of the ballot box, are not only within the constitutional power of the Legislature, but are commendable, and at least some of them absolutely essential." Const. Lim., pp. 757 and 758.

The Constitution of 1868 was amended in 1877 so as to require a residence of ninety instead of thirty days in the county as qualification. This amendment was aimed at the fraudulent practice of buying purchaseable electors and colonizing them in a county thirty days before the time of voting, in order to control the election of its representatives or other local officers. The new requirement increases the

expense attendant upon what is known as colonization of voters, and furnishes additional time for detecting the fraud. Where such migratory characters are compelled to state on oath their ages, occupations, place of birth, place of residence, the township from which they may have removed and the full name by which they are known, they give data which, if upon inquiry it prove to be false, invites further investigation to ascertain the fraudulent purpose that induced the perjury, and if it be a true history of the movements of the voter, affords the means of verifying or contradicting his statements as to age or disqualification for crime. We must assume that the purpose of the Legislature was to attain such results as obviously and naturally might follow the strict enforcement of the statute. Where a statute, enacted in obedience to such a mandatory constitutional provision as that contained in Article 6, § 2 (if not where it is passed in the exercise of the bare authority to require registration), declares that no votes shall be received but those of registered electors, it seems to be settled that votes cast in a township where there has been no registration at all cannot be made lawful and counted by proving that none but duly qualified electors voted. Cooley's Const. Lim. (6th Ed.), p. 758; McCrary on Elec., § 100; Brightly El., p. 51.

It may be that the rule would be different where a fraudulent conspiracy to deprive the voters of a particular precinct of the right of suffrage is shown. "It is no answer (says Judge COOLEY), that such a rule may enable the registry officers, by neglecting their duty, to disfranchise the electors altogether; the remedy of the electors is by proceeding to compel the performance of the duty, and the statute being imperative and mandatory cannot be disregarded." Under our statute, registrars who wilfully fail to discharge their official duties are also subject to indictment. This principle does not apply where an act of

the Legislature fails to provide any means of registering the electors of a ward, section or township (*Van Bokkelen* v. *Canaday*, 73 N. C., 198), and was declared equally inapplicable where the law under which a municipal election was held was disregarded by a failure of the proper authorities to order a registration at all, thus vitiating the whole vote cast. McCrary, § 101; 6 Am. & Eng. Enc., 2905.

Where an individual voter offers to comply with a reasonable regulation in reference to registration, and is prevented from compliance by the wrongful act of the registrar, his vote should unquestionably be counted, and the Judge below very properly so held. McCrary, § 102.

In the case of *Hampton* v. *Waldrop*, 104 N. C., 453, a question widely different from that under consideration was presented. There the registrar merely entered in a new book the names of electors which had been properly and lawfully recorded on a former registration book that had been lost, and then registered in the manner prescribed by law the names of other persons who were entitled to vote at that place. The new applicants had a right to be registered in a new book if the old could not be found when they complied with the law. Those whose names appeared in the old registry had already complied with the requirements of the statute.

If the Legislature sees fit to enact a reasonable regulation as to the manner of recording the names of voters, and the information which the voter must impart (in order that persons so inclined may inquire into the truth of his statements), and to pronounce the registration of each particular name invalid unless the elector shall comply with its requirements, it is manifest that the same reasons exist for rejecting the ballot of each voter whose registration is not valid, as for refusing to count a whole township not registered at all. An invalid registration is no registration at all, and the

principle must be applied to an individual, as well as to a class.

In the case at bar, then, we have a reasonable statutory requirement that the elector shall place upon the registration books certain facts connected with his own history, in order that opportunity may be given to look into the grounds for challenge and thereby prevent illegal voting, or that the Courts may detect and punish the crime if it becomes a fact accomplished. The law, in unmistakable and imperative terms declares that the registration in each particular case shall be invalid and void for failure to comply with the specific requirements. If, in the face of the first clause of the section ("No registration shall be valid"), the Courts should declare its provisions merely directory, and thus thwart the manifest purpose of an independent co-ordinate branch of the government when acting within the limit of its power, they would establish a precedent far more dangerous to liberty and constitutional government than all of the real or imaginary evils or inconveniences that might arise from the enforcement of the statute. Cooley's Const. Lim., pp. 197, 200 and 201.

"The Judiciary cannot run a race of opinions upon points of right, reason and expediency with the law-making power." Cooley (4th Ed.), star p. 168; *State* v. *Patterson*, 98 N. C., 660.

While most of the regulations of the law respecting the manner of opening and holding elections are held by the Courts to be merely directory, provided the language of the statute does not plainly make them mandatory, no American Court has ever claimed the right to disregard an imperative requirement of a statute if the Legislature had the power to pass it and to make it unmistakably mandatory. If the elector purposely refrains from qualifying himself by registration for the enjoyment of the privilege of voting, it is his own fault; and if he is prevented by physical disability from having his name entered on the registration books

before the time prescribed by law, it is his misfortune. *Capen* v. *Foster*, 23 Am. Dec., 632; *People* v. *Hoffman*, 116 Ill., 587; McCrary, §§ 96 and 97.

The law being constitutional, "*it must appear that the voter did, or offered to do, all that the law required at his hands, and that his failure to be registered was the fault of the officer of registration.*" McCrary, § 102, p. 67; *State* v. *Commissioners*, 20 Fla., 859. In absence of proof to the contrary, it is always presumed that the officer has done his duty. Every citizen is presumed to know the law governing his relations with others, as well as the mandatory rules which prescribe how he may secure the enjoyment of his rights. In the absence of any definite information on the subject, the failure to enter upon the registration book such facts connected with the history of an elector as the statute imperatively requires as a prerequisite to the exercise of the elective franchise, must be considered due to the carelessness or inexcusable ignorance of such elector. That presumption can be rebutted only by showing that he offered to comply with the requirements of the statute, and was prevented by the neglect or wilful act of the registrar. McCrary, § 101.

We concur with the Court below that it was the duty of the elector to make the answers as specific as the statute requires them, and that the registrar, if he read the headings calculated to elicit the requisite answers, certainly did all that the law required of him.

Reason, as well as authority, commend the view taken in the Court below that the burden of showing a strict compliance with the law was on the relator, instead of requiring the registrar to charge his memory with all that occurred, so as to be able to state whether the elector refused, when asked, or simply, neglected to state definitely his places of birth and residence.

It only remains to determine whether the names of either or all of the two classes of electors mentioned as recorded by

the two registrars, were lawfully registered so as to entitle them to vote. Where the words of a statute have no technical meaning, they must be interpreted according to their ordinary import. In response to either the question, "What is your place of birth?" or "What is your place of residence?" the answer "Montgomery County," would generally be deemed sufficiently definite, and is the reply that would be universally given by natives or residents of the county, except that some persons would make the response more specific by giving the name of an incorporated town located in that county if they lived within its bounds; as, for instance, "Troy." But where the reply to either of those questions was "North Carolina," it was not sufficiently specific, according to the ordinary import of words, and if it were treated as sufficient in law, the manifest purpose of the Legislature would be defeated. Usually it does not prove difficult to test the truth of the statement that a man was born or resides in a particular county, by reference to the tax-lists, poll-books, church records or by resorting to other means of acquiring information; nor when the statement is verified to determine whether he is disqualified by any record existing in such county or in the next one to which he migrated from that, but with no more definite clue to the previous history of a person than the fact that he was born in North Carolina, the most diligent efforts to trace his past movements must almost inevitably prove vain.

The electors of Little River precinct in Little River Township who caused the name of the county of their birth to be recorded opposite their names, and "Montgomery County" to be entered as their place of residence, we think complied with the requirements of the statute. But the registration at Bean's Mill precinct was fatally defective in stating the electors' places of birth to be "North Caralina."

As we understand the facts, the case comes before us now upon an intimation based upon an admitted state of facts as

110 — 16

to the registration in certain precincts only, which induced the relator to submit to judgment of nonsuit and appeal. All other grounds upon which plaintiff relies are reserved, as are all other grounds of defence, to await the decision as to the legality of the registration at Bean's Mill and Little River precincts.

For the error in holding that the registration in Little River precinct was not valid, if the testimony of the registrar was believed, the relator is entitled to a new trial. The Courts have no more right to look to possible consequences of enforcing a law than they have to conjecture as to the motives of the Legislature in enacting it, provided the law passed is within the limit of its powers. Whatever. defects there may be in the registration books, as they appear to day, it will not be difficult for electors to have them cured before the next general election, as there will be abundant time to give notice. Where an elector may be again sworn, we see no reason why blanks may not be filled or improper entries erased and proper ones substituted opposite to his name as already recorded in the book.

CLARK, J.—concurring in result, but dissenting in part from the reasoning: It is within the power of the Legislature to adopt reasonable regulations in regard to the registration of voters. The act in question is not obnoxious to any charge of interference with the constitutional right of voting. The requirement that the party offering himself for registration shall give his place of birth, his place of residence and the township from which he has removed, is reasonable, as it aids the purpose of tracing out and preventing attempted frauds on the elective franchise.

When the voters in Little River Township and precinct, to the interrogatories of the registrar, gave simply "Montgomery County " as their place of birth and residence, such answer, if truthful, and in the absence of a requirement in the statute

that the voter should particularize further by giving the name of the town or township of birth and residence was sufficient, and it was error to hold that the votes of persons so registered should be thrown out. Most especially is this so, when the officer of the law received such responses without objection or demand for further particularity or identification on the part of the voter.

As to the voters at Bean's Mill precinct, Ophir Township, the response of "Montgomery County," as place of residence, was, as we have said, sufficient, especially when no further information was sought by the registrar. The response of "Ophir" to the question as to the township whence the voter had removed was sufficiently definite, and could only be understood as meaning that the voter was still, as he had been at the previous election, a resident of that township. The response giving "North Carolina" as the place of birth is indefinite. But it was error in the Court to hold, as a matter of law, that *per se* this was the fault of the voter and invalidated the vote given by him. Whether it was so or not, depended upon the facts of the case. If the registrar, when such response was given, had asked for a fuller and more definite response, and this had been refused or not given, then there would have been conduct on the part of the person offering to register which might be justly held as sufficient to deprive him of the right to vote. But the registrar is the officer of the law. He is appointed to make the inquiries and set down the replies. When, in response to the inquiry as to the place of birth, the elector in good faith, and thinking he had complied with all that was required of him, responded "North Carolina," he was guilty of no disobedience of law or other act which deprived him of his right to vote. If the response was not sufficiently definite, the representative of the law, the registrar duly appointed, sworn and paid to perform the duty of taking the registration, should have asked the elector to respond more particularly,

and if the registrar failed to do so, the neglect of duty was on the part of the registrar. The elector might well be justified in taking the acquiescence of the officer as a representation that the answer was a full compliance with the requirements of the law. Any other view, it would seem, would make the registration of voters not an impartial observance of regulations to protect the electoral franchise and to prevent frauds upon it, but would furnish opportunities whereby the trusting, the unwary, the unskilled or the ignorant would be deprived of their constitutional right of exercising the right of voting. This presupposes that the answers of the party offering to register were made in good faith, and this is a presumption of law, as the burden of invalidating such vote is upon the plaintiff who is seeking to reverse the result of the vote as cast. Of course if the voter is shown to have answered evasively and indefinitely purposely, in bad faith, or if asked for further information refuses it, or if informed that his reply is insufficient, he failed to make it more definite, the fault would be his and his intentional non-compliance with the reasonable requirements of the statute would invalidate his vote.

As to voters from Troy Township, in regard to whom it appeared that the inquiry required by law was addressed, which they failed or refused to answer, such votes were properly held invalid.

DAVIS, J., concurred in the opinion of CLARK, J.

*Per curiam.*                                                    Error.