*In re* REID AND CURTIS.

*In re* E. L. REID AND E. O. CURTIS.

*Election Law—Registration—Duty of Registrars.*

1. Under chapter 159, Acts of 1895 (Election Law), registrars may ask the elector his age and residence, the township or county from whence he removed, in case of such removal since the last election, and (under the authority of Section 1, Article 6 of the Constitution) whether he has resided in the State twelve months, and in the county in which he proposes to vote ninety days, preceding the election.

2. If, in reply to such questions, the elector answers that he is twenty-one years old, and has resided in the State twelve months and in the county ninety days preceding the elect. ion, it is the duty of the registrars, upon his taking the prescribed oath, to record his name as a voter ; but bystanders may require him to be sworn as to his residence.

3. Challenges must be made at the time and in the manner specified in the Election Law of 1895.

   (AVERY and CLARK, J. J., concur, but are of the opinion that the additional question, to-wit, whether the applicant for registration "has been convicted of an infamous crime," should be allowed to be asked.)

This matter came up to this Court on the appeal of E. L. Reid and E. O. Curtis, registrars of the 5th ward of Winston, Forsyth county, from an order made by Walter A. MONTGOMERY, one of the Justices of the Supreme Court, *in Chambers* in Raleigh, on the 13th day of October, 1896. The order was made upon proceedings instituted under Section 7 of the Election Law of 1895. The petition, accompanied with affidavits to support it, alleged that Curtis and Reid, registrars, had unlawfully and corruptly combined to prevent lawful registration in their ward and were carrying the plan into effect ; and there was a prayer for an order to compel the registrars to proceed with the registration of all lawful voters. Counter-affidavits were

119—41

*In re* REID AND CURTIS.

filed in which the facts stated in the petition were denied, and especially the charge of a corrupt combination on the part of the registrars to prevent registration. Upon the hearing by Justice MONTGOMERY it was found as a fact that the registrars had not combined to prevent legal registration but that they were violating the election law as to the registration of voters ; and it was ordered that they should proceed with registration according to law as prescribed in the order. The rules prescribed in the order are set out in the opinion of the Court.

*Mr. J. W. Graham*, for plaintiff.

*Messrs. E. B. Jones* and *Shepherd & Busbee*, for defendants (appellants).

FAIRCLOTH, C. J. : This matter comes before us by appeal from an order and judgment made by W. A. MONTGOMERY, one of the justices of this Court. After argument by counsel we are of opinion that said order is in accordance with the true intent of the Act of Assembly of 1895, Ch. 159, and the same is affirmed. In consideration of the importance of the matter, it is proper to say that we think the registrars under said act may ask the elector his age and residence, as well as the township or county from whence he removed, in the case of a removal since the last election, and the name by which he is commonly known, and that by authority of the Constitution, Art. 6, Sec. 1, the registrars may ask the elector if he has resided in the State twelve months next preceding the election and ninety days in the county in which he offers to vote, and that no more questions can be asked by the registrars under said act. If the elector answers that he is 21 years old, and has resided in the State twelve months and in the county ninety days

*In re* REID AND CURTIS.

previous to the election at which he proposes to vote, it is the duty of the registrars, upon his taking the oath prescribed by Section 16, to record his name as a voter. Upon the request of any bystander he can be sworn as to his residence. Challenges, if made at all, must be made at the time and in the manner specified in the act.

Affirmed.

FURCHES, J., concurring: Concurring in the opinion of the Court, I wish to express my reasons for doing so upon one question considered but not discussed in the opinion.

It was contended by one member of the Court that there should be added to the questions to be asked the party proposing to register one other question, to-wit, " Whether he has been convicted of any infamous crime." And it was claimed that this was not only necessary to preserve the purity of the ballot box but was required by Section 1, Article 6 of the Constitution, and that it was also required by Section 13, Chapter 159 of the Laws of 1895.

I do not think so. Both the Constitution, Article 6, Section 1, and the Act of 1895, Chapter 159, Section 13, contain much more than this simple proposition—whether the elector has been convicted of any infamous crime. To this sentence the Constitution adds, " Unless such person shall be restored to the rights of citizenship in a manner prescribed by law." And Section 13, Chapter 159 of the Act of 1895 adds, " Unless they shall have been legally restored to the rights of citizenship." This, to my mind, presents a very different proposition to that contained in the sentence " Whether he has been convicted of any infamous crime." If that alone had been a disqualification of the elector, I would have agreed that it was a proper question to be asked by the registrar.

It is conceded that the registrar while registering the vote of electors is not a judge—trier of the elector's qual-

*In re* REID AND CURTIS.

ifications.  It is his duty to register the names of those claiming to be qualified electors.  Their names being on the registration books gives them a standing in Court, but if their right to vote is disputed, if they are challenged, their right is to be determined by the judges.  But unless their names are put on the registration books they cannot have the question tried, no matter how just their claims are, and they are not allowed to vote.  If upon the trial it is found that they are not qualified voters their names are stricken off, and they stand as if their names had never been put on the books.  It is true that the registrars are allowed to ask certain questions, and this may seem inconsistent with what I have said, but it is not.

A simple answer to either one of the questions allowed determines the question as to the right to register; for instance: "Are you 21 years old?"  Answer, "No." This ends the matter.  Suppose the answer should be "Yes" instead of "No" and a bystander says he is not.  It will not be contended. that the registrars could proceed to try this question.  But it would be their duty to register his name and let the party that disputes his age make the challenge.  And at the proper time and in the proper way the judges will try the question.  And so it is with the other questions allowed by the Court; a plain, simple answer from the party proposing to register determines his right to do so.

But this is not the case with regard to the question pro-posed to be asked—"Whether he has been convicted of any infamous offence."  Suppose he answers "Yes;" this answer does not determine his right to vote.  It may be that he was convicted before 1877, and if so he is still entitled to vote; or, suppose that since his conviction "he has been legally restored to the rights of citizenship," then both the Constitution and the Act of 1895 allow him to

*In re* REID AND CURTIS.

vote.   So it is seen that, if he should answer " that he had been convicted of an infamous offence," this does not determine his right to vote, but leads to an investigation as to whether it was before 1877, or if since then whether he has been *legally* restored to the rights of citizenship.   And this is an investigation that the registrars are not authorized to make or determine.

I am therefore of the opinion that this question should not be allowed.

CLARK, J. (dissenting in part) :   To the questions held by the Court allowable for the registrars to ask I think should be added, in any case the registrars think proper, this, " Whether he has been convicted of any infamous offence."   The same clause of the Constitution (Art. 6, Sec. 1) which the Court holds authorizes the inquiries as to his age and residence contains the express provision that no one shall be an elector if he has been adjudged guilty of an   infamous offence.   If that clause authorizes   the inquiries as to age and residence, it also necessarily authorizes this inquiry, if the registrars think proper.   The election law (Acts 1895, Ch., 159) so provides also, for in Section 13 it provides that no person shall be *allowed to register* or vote if he has been adjudged guilty of an infamous offence since 1st January, 1877.   How can the registrars discharge that imperative command of the law not to allow any such person to register unless, if they have any doubt, they are permitted to ask the question before he does register ?

It is as much a crime against the elective franchise to permit disqualified persons to vote as to reject those who are qualified.   In avoiding one evil we must not run into the other. *Evitata Charybdi in Scyllam incidere.*   The act of the Legislature evidently (as I think) intends to guard against both evils alike.

*In re* REID AND CURTIS.

AVERY, J. (dissenting): The Election Law (Ch. 159, Laws 1895, Sec. 13) provides " that the following classes of persons shall not be allowed to register and vote in this State, to-wit, persons under 21 years of age, idiots, lunatics and *persons* who upon conviction or confession in open court shall have been adjudged guilty of felony or other crime infamous by the laws of this State, and committed after the first day of January, 1877, unless they shall have been legally restored to the rights of citizenship." It is conceded by the majority of the Court that it is the right and duty of the registrar to ask every person who offers to register what is his age and residence, and to refuse to register any whose answers show that they are disqualified because they have not attained the age of 21 years or have not resided for the requisite period in the State and county, or are not residents of the townships in which they propose to vote. In this ruling I fully concur. But the Constitution, Article 6, Sec. 1, provides, in the very same language used in Section 13 of the act, for the disfranchisement of those adjudged guilty after conviction or confession in open court, " unless restored to citizenship in a manner prescribed by law." The whole Court concurred in *Harris* v. *Scarborough*, 110 N. C., 232, in sustaining the power of the Legislature to enact reasonable regulations, and this holding is supported by the highest authorities upon constitutional law. Cooley's Const. Lim., pp. 757, 758. The Legislature has declared that these infamous persons " shall not be allowed to register." By whom shall they be denied that privilege? Manifestly, by the only officers who have the opportunity to allow or disallow the registration. I think that Section 13 is imperative in its mandate that neither infants nor infamous persons shall be permitted by the registrars to have their names enrolled on the list of voters. The majority of the Court concede

the power of the registrar to ask one offering to register what is his age, and if he answer that he is 18 to refuse to record his name.    Upon what reasonable principle is he denied the right to ask such persons whether they have, since January 1, 1877, been adjudged guilty on conviction or confession in open court of a felony or other infamous crime?    I confess I do not understand.    It is immaterial whether the registrar be required to add to this question the further interrogation, "And have you since been restored to citizenship?" or whether he permits the proposed voter to add to his answer the statement that he has been restored.

I see no reason why the merciful provision that a felon might be allowed restoration to citizenship, which is generally conditioned by statute upon proof of a reformation in his life for a certain period, should be placed in a more favorable plight before the law than a boy of 20 years of age or a non-resident who has never been accused of previous dishonesty.    The fact that the infant, in response to the usual question, says he is 21 years of age will usually fix upon him the *scienter* in case of subsequent indictment for perjury in corruptly taking the oath, under Section 36 of the act.    But the felon, being asked no questions may well contend, when arraigned for the same offence, that no one had explained to him that he was disqualified; and that, on the contrary, some unauthorized persons had informed him that he was a qualified voter, and he so honestly believed.    If the construction placed upon the act by the majority of the Court be correct, then the law leaves a loophole for convicts to escape the consequences of a false oath, while careful provision is made under that same section of the Constitution, and in the provisions of the same section of the act, to punish any inexperienced youth who may attempt to perpetrate the same

fraud and resort to perjury to effect his object. If such is the proper interpretation of the law, it is neither fair nor just. If non-residents and infants are to be interrogated and subjected to the perils of conviction and punishment for perjury, much more must the Legislature have intended that safeguards should be interposed to prevent the lowest class of our people from exercising the highest and most important duty and privilege of a citizen.

Where one is charged with the misdemeanor of retailing spirits, the law makes it incumbent on him to show on the trial that he was licensed by the proper authorities of the Government to sell, if he would avail himself of that defense. So, where one enters upon land after being forbidden to do so, it is made incumbent on him when indicted to show if he can, as a defense, that he acted in good faith or under a license from the owner. *State* v. *Gentry*, at this Term. A similar rule applies in all cases where the matter of excuse or defense is peculiarly within the knowledge of the defendants. *State* v. *Rogers* at this Term. I cannot see how it imposes any peculiar hardship on a felon to throw upon him the burden of explaining that for good behavior he has been restored to the full enjoyment of the rights of citizenship. I think that every good citizen of the State, who is interested in the common welfare and desires to see elections conducted fairly and honestly, ought to prefer and would prefer to answer with head erect that there is no brand of infamy upon him rather than have his vote and power as a citizen neutralized by a convict, who is one of the vilest of the vile, because of the failure to subject the felon to the same sort of interrogation. No man ought to be ashamed to swear that he has never been convicted of a felony or infamous crime, and it is inconceivable that good men should be so extremely and foolishly sensitive as to object to such

interrogation. But the fact that there may be such persons is no excuse for allowing the Constitution to be evaded and the purpose of the legislature to be thwarted.

To the foregoing dissent upon the merits I must add that the opinion which I have filed in *Harkins* v. *Cathey* sets forth my views as to the jurisdiction in this as well as in that case, with the difference that in Cathey's case the justice who heard the case was called upon to pass on the title to an office.