Argued October 16; reversed and remanded November 18, 1947

# SPENCE *v.* WATSON, ASSESSOR FOR THE
## COUNTY OF MULTNOMAH.
### 186 P. (2d) 785

*John J. Coughlin,* (with Griffith, Peck, Phillips & Nelson, all of Portland, on brief), for appellant.

*Dan M. Dibble,* Deputy District Attorney and *Arthur Langguth,* (with John B. McCourt, District Attorney, and Stanley Jones, Deputy District Attorney, all of Portland, on brief), for respondents.

Before ROSSMAN, Chief Justice, and LUSK, BELT, KELLY, HAY and WINSLOW, Justices.

KELLY, J.

This is a suit by plaintiff J. R. Spence, owner of an undivided one-fifth interest in and to certain parts of Tax Lots 7 and 8, Section 25, Township 1, North Range 3 East of the Willamette Meridian in Multnomah County, Oregon, against the assessor, sheriff and district attorney of said county, to enjoin and restrain the said assessor from including said property for tax assessment purposes within the boundaries of the town of Troutdale in said county and state; to enjoin and restrain said sheriff from collecting or attempting to collect from plaintiff taxes based upon any assessment or levy including said real property within the boundaries of said town, and to restrain and enjoin said sheriff from collecting or attempting to collect from plaintiff any real property taxes other than such taxes as plaintiff should be required to pay if said real property is not within the boundaries of said town of Troutdale.

The learned trial court sustained defendants' demurrer to plaintiff's complaint on the ground that, in the opinion of said trial court, said complaint does not state facts sufficient to constitute a cause of suit in that Chapter 388, Oregon Laws 1945, upon which plaintiff relies, was and is unconstitutional.

Plaintiff declined to plead further, and, on the 9th day of April, 1947, a decree of dismissal was made and entered from which plaintiff has prosecuted this appeal.

It appears from plaintiff's complaint that on or about April 5, 1946, a special election was held for the electors of Troutdale, Multnomah County, Oregon, and for the electors of a certain area contiguous and adjacent thereto for the purpose of altering the boundaries of Troutdale, and including therein said contiguous and adjacent territory, which is also described in plaintiff's complaint; and that the property, also specifically described in said complaint of which plaintiff owns an undivided one-fifth interest, is within the boundaries of the proposed annexation.

It also is alleged in plaintiff's complaint that 15 per cent of the resident owners of property on the proposed annexation did not first sign and file with the authorities of the town of Troutdale a petition that such territory be included in said town of Troutdale.

One question, presented by this record, is whether the legislature has the authority to legislate upon the procedure that must be observed by an incorporated town or city in annexing territory outside of its corporate boundaries, or, to state that question differently, whether the provisions of Section 1a of Article IV, of the constitution of Oregon, reserves that right to the electors of such city or town.

To solve that question, we must construe the langage of the third sentence of said section 12, which is as follows:

" * * * The initiative referendum powers reserved to the people by this constitution are hereby further reserved to the legal voters of every municipality and district, as to all local special and municipal legislation, of every character, in or for their respective municipalities and districts. * * *''

■ This court has often held that, so far as they relate to the same subject matter, Article IV, Section 1a and Article XI, section 2 of the Constitution must be read and construed together. *State ex rel v. Port of Astoria,* 79 Or. 1, 154 P. 399.

The pertinent language of said section 2 of Article XI is as follows:

"The legislative assembly shall not enact, amend or repeal any charter or act of incorporation for any municipality, city or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the constitution and criminal laws of the state of Oregon.''

■ In *State ex rel v. Port of Astoria,* supra, this court, speaking through Mr. Justice HARRIS, said:

" * * * Powers exercisable by cities and towns may be placed in two separate classes, which, for the sake of brevity, and the want of better terms, will be designated as: (1) Intramural; and (2) extramural. When the legal voters of a city enact municipal legislation which operates only on themselves and for themselves, and which is confined within and extends no further than the corporate limits, then such voters are exercising intramural authority. When, however, the legal voters attempt to exercise authority beyond the corporate

limits of their municipality, they are using extramural powers."

"* * * * The right to employ intramural authority finds its source in the language of the Constitution; because the legal voters of cities and towns are by that instrument expressly empowered to enact and amend their own charters; *but permission to employ extramural authority* must be granted to cities and towns before the privilege can be exercised. One power coexists with the Constitution, while the other power does not exist at all, unless the people of the whole state either grant the authority themselves by the initiative or extend the privilege through their representative, the legislature." *State ex rel v. Port of Astoria,* 79 Or. 1, 154 P. 399. (Italics supplied.)

The conclusion is inescapable that the legislature has the authority to enact a law prescribing the procedure to be followed in determining whether any prescribed area outside of the corporate limits of an incorporated town or city shall be annexed and become a part of such town or city. This leads to a consideration of the provisions of the act of 1945.

The applicable provisions thereof are as follows:

. "The boundaries of any municipal corporation now existing in this state, * * * * and of cities and towns heretofore incorporated may be altered and new territory included therein after proceedings had as required by this section; * * * provided further, that in any and all annexations 15 per cent of the resident owners of property in such new territory shall have first signed and filed with the city authorities a petition requesting such new territory to be included therein. The proceedings required herein shall be additional and alternative to any provisions of the respective charters of any such incorporated city." Excerpt, section 1 of chapter 388, Oregon Laws 1945, p. 647, amending section 95-901, O. C. L. A.

■ By reason of the filing on July 3, 1917, of a certificate of the city recorder of· Troutdale with the librarian of the supreme court library so stating, we take judicial notice that Troutdale was incorporated by a majority vote of the qualified voters and residents of said city on the 30th day of September, 1907, under the provisions of Title 26 of Lord's Oregon Laws. Section 95-801, O. C. L. A., Vol. 6, p. 586.

■ When Troutdale was thus incorporated, the general laws, under which such incorporation was accomplished, had no provision with respect to any petition from the residents, property owners or legal voters in the area sought to be annexed, being a prerequisite to the calling of an election by the council, or other legislative body of a municipality, to determine whether or not such proposed area should be annexed.

The law then in effect is entitled:

"An Act for a General Law for the Incorporation of Cities and Towns in the State of Oregon."

Section 4 of this act, in so far as applicable to the question before us, provided:

"The boundaries of any municipal corporation now existing in this state, or which may hereafter be incorporated therein, may be altered and be incorporated therein, may be altered and new territory included therein after proceedings had as required by this section. The common council or other legislative body of such corporation, shall, upon receiving a petition therefor, signed by not less than one-fifth of the qualified electors of such corporation, as shown by the vote cast at the last municipal election held therein, submit the question to the electors of such corporation and to the electors residing in the territory proposed by such petition to be annexed to such corporation

and become a part thereof." Laws of Oregon 1893, p. 119, at pp. 120, 121.

In 1911, the legislative assembly enacted a law to the same effect with regard to the question now under consideration as provided in the above quoted excerpt from section 4 of the 1893 act, except that the petition for annexation was required to be signed by not less than one-fifth of the qualified electors of such corporation, as shown by the vote cast at the last municipal election held therein, *for the office of mayor*. General Laws of Oregon 1911, Chapter 81, p. 122. (Italics supplied.)

By the act of 1911, all acts and parts of acts in conflict therewith were expressly repealed in so far as they conflicted with that act. Section 2, ibid.

From the foregoing reference to, and quotation from, the general laws, it will be noted that we are not called upon here to construe any other charter provision than those comprising the general laws of the state; and, hence, the sentence in the 1945 law, which refers to provisions of the respective charters and declares that the proceedings required by the 1945 amendment "shall be additional and alternative" thereto, has no application to this case, because only the general laws are involved here, and upon the "extramural" proceeding with which we are here concerned, the legislative assembly was and is vested with authority to legislate.

■ Upon such a course, namely, the course to be taken in order to determine whether the boundaries of a city shall be enlarged by annexing outside territory, the same involving an extramural proceeding, the legislature or the general law making power of the state

has the authority to legislate both by originating a course of procedure and by thereafter amending it.

"This is a corollary of the inherent and sovereign power of the legislature over all agencies of government, wherein it is not restricted by constitutional limitations." 43 C. J., p. 155, Section 137, note 61.

■ The brief of defendants states that the notice of election contained the name of the late father of plaintiff; that the plaintiff had full knowledge of said special election and voted thereat; that plaintiff made no objection to the holding of said special election, nor did he file any complaint, criticism or objection with the common council of Troutdale, or make any effort to prevent the holding of said special election. The number of votes alleged to have been cast in said new territory and the respective numbers of ballots cast for and against annexation are also stated in defendant's brief. It is also stated in defendant's brief that the recently acquired municipal water system comprising five acres of land and a newly constructed reservoir and a larger pipeline, all owned by the town of Troutdale, are located within "the annexed territory".

None of the foregoing statements appear in plaintiff's complaint and hence, they are not before us upon the question of whether a demurrer to such complaint should have been sustained.

■ Defendants contend that the order of the county court, to the effect that the area outside of Troutdale sought to be annexed thereto had been so annexed, was conclusive. We find no reference to such order in the complaint and hence that question is not before us. If it were, we would be unable to concur with defendants' contention.

■ Defendants also argue that the provision of the 1945 statute, to the effect that upon receiving a petition from 15 per cent of the resident owners of real property in the area sought to be annexed, the common council or other legislative body of the municipality could call an election, is not mandatory but only directory.

With this argument, we cannot unqualifiedly agree. In this case, wherein there is no other provision of law applicable than the 1945 statute, we think that the provision under consideration was mandatory upon the municipal authorities and not merely directory.

"As the jurisdiction to annex or detach territory or extend or reduce corporate limits is special, at least a substantial compliance with all mandatory requirements is essential."

* * * *

"The proceedings are usually initiated by petition signed by specified persons and addressed to a designated body, * * * " McQuillen, Municipal Corporations, Second Edition, Revised, Vol. 1, Sec. 298, PP. 824, 826.

"The judicial decisions are in accord in declaring that the essential provisions of the law touching the sufficiency of the petition in proceedings to change corporate boundaries must be followed, but they vary somewhat as to strictness in this respect, due to some extent to the difference of conditions presented in the adjudicated cases. However, *without a sufficient petition no jurisdiction is conferred on the tribunal empowered to act.* Section 301, pp. 833, 834, Ibid. (Italics supplied.)

In an opinion rendered September 29, 1941, the supreme court of Arizona quote the provisions of the Arizona statute and then say:

"It appears, therefore, that it is an indispensable condition precedent that a petition for annexation

be signed by 'the owners of not less than one-half in value of the property in any territory contiguous to the city, as shown by the last assessment of said property.' " *City of Phoenix, et al v. State ex rel Harless,* 58 Ariz. 8, 117 P. 2d 87.

In a later case involving the validity of a different ordinance, the Arizona court held that the petition in that case had the requisite signatures. *City of Phoenix, et al v. State ex rel Harless,* 60 Ariz. 369, 137 P. 2d 783. See also: *Windman v. City of Vincennes,* 58 Ind. 480; *Forsyth v. City of Hammond,* 142 Ind. 505, 40 N. E. 267, 41 N. E. 950, 30 L. R. A. 576; *State ex rel Smith v. Village of McKinley,* 132 Minn. 48, 155 N. W. 1064; *State ex rel Marsh v. Town of Boyles,* 207 Ala. 59, 92 So. 250; *Ziebell v. Village of Posen,* 257 Ill. App. 32; *In re Annexation of Portion of Abington Tp. to Borough of Jenkintown,* 101 Pa. Super 227; *DeBauche v. Green Bay,* 227 Wis. 148, 277 N. W. 147.

As stated, plaintiff's complaint contains an allegation that 15 per cent of the resident owners of property in the proposed annexation did not first sign and file a petition that such territory be included in said town of Troutdale. This is admitted for the purpose of the demurrer.

██ Defendants further urge that the election in suit was validated by the enactment of chapter 164, Oregon Laws 1947, the provisions of which are as follows:

"Section 1. All annexations of territory to cities prior to the passage of this act hereby are declared valid if elections have been held in such territory annexed and in the city and a majority of the votes cast in the territory and the city respectively have been favorable to such annexation and a notice containing a description of the area or areas to be annexed and the time and place of such election

has been published in a newspaper of general circulation in the annexing city and area or areas at least once four weeks prior to such election.

"Section 2. All annexations of territory to cities prior to the passage of this act hereby are declared valid if a majority of the owners of the real property in the area annexed gave their written consent thereto, and a majority of the votes cast in the city have been favorable to such annexation, and a notice containing a description of the area or areas to be annexed and the time and place of such election has been published in a newspaper of general circulation in the annexing city at least once four weeks prior to such election."

There is no allegation in plaintiff's complaint to the effect that the majority of votes cast in the territory and the city respectively have been favorable to such annexation or that a notice containing a description of the area or areas to be annexed and the time and place of such election has been published in a newspaper of general circulation in the annexing city and area or areas at least once four weeks prior to such election or that a majority of the owners of the real property in the area annexed gave their written consent thereto. It must be borne in mind that this case is before us upon defendants' demurrer to plaintiff's complaint. Bearing that in mind it is obvious that the question of the effect of said chapter 164, Oregon Laws 1947, upon the validity of the assessment or threatened assessment in suit is not before us.

In order that the parties hereto may acquit us of acting cavalierly or disdainfully in declining to pass upon this question in the present state of the record, permit us to say that we have examined the authorities thereupon. In doing so, we find in an annotation in

140 A. L. R. at pp. 984, et seq., the following terse presentation of the issue:

" * * * it should be observed that courts which follow the rule that defects going to the jurisdiction of the tax authorities cannot be remedied by subsequent legislation have distinguished between curable irregularities in the organization of such district," (citing authorities) "and incurable jurisdictional defects." (citing authorities).

"On the other hand, in some cases the scope and extent of the legislative power to remedy, by curative statutes, defects in tax proceedings is limited solely and exclusively by constitutional prohibition. Under this view the power of the legislature, rather than the power of the taxing authorities is the test of the effectiveness of curative statutes, and a lack of jurisdiction in the taxing authorities, whether arising from the lack of any valid enabling statute are from a failure of the tax authorities to comply with purely statutory jurisdictional requirements, is not beyond the reach of curative legislation." (Citing authorities.)

The judgment of the circuit court is reversed, the demurrer of defendants to plaitiff's complaint is overruled, and this cause is remanded for such further proceedings as may not be inconsistent herewith.

LUSK, J., concurs in the result.