GRIFFIN *v.* VANDEGRIFF.

No. 16524.   APRIL 11, 1949.   REHEARING DENIED MAY 12, 1949.

*H. O. Hubert Jr.*, for plaintiff in error.

*E. A. Wright,* contra.

*Poole, Pearce & Hall, Heyman, Howell & Heyman, Hugh Howell Jr., Morris B. Abram, Herbert J. & Joseph F. Haas, J. Kurt Holland, Gilmer MacDougald, MacDougald, Troutman, Sams & Branch, as amici curiae.*

DUCKWORTH, Chief Justice. (After stating the foregoing facts.)
■ Article 4, section 4, paragraph 1 of the Constitution of 1945 is as follows: "All contracts and agreements which may have the effect, or be intended to have the effect, to defeat or lessen competition, or to encourage monopoly, shall be illegal and void. The General Assembly of this State shall have no power to authorize any such contract or agreement." With minor changes in sentence structure the quoted clause was taken from article 4, section 2, paragraph 4 of the Constitution of 1877, which was as follows: "The General Assembly of this State shall have no power to authorize any corporation to buy shares, or stock, in any other corporation in this State, or elsewhere, or to make any contract, or agreement whatever, with any such corporation, which may have the effect, or be intended to have the effect, to defeat or lessen competition, or to encourage monopoly; and all such contracts and agreements shall be illegal and void." If this clause of the Constitution is ambiguous, the construction placed thereon, while it was a part of the provisions of the Constitution of 1877, in *State* v. *Central Railway Co.,* 109 *Ga.* 716 (35 S. E. 37), would be controlling as to its meaning in the present Constitution. *Thompson, Lieutenant Governor,* v. *Talmadge,* 201 *Ga.* 867 (41 S. E. 2d, 883). But if it be unambiguous, we would not be authorized to look beyond its actual verbiage to find its meaning, but would be required to give it that meaning which is expressed. It would neither require nor permit a construction which would cause it to mean anything other than that clearly revealed by its own terms. *Neal* v. *Moultrie,* 12 *Ga.* 104, 110; *Standard Steel Works* v. *Williams,* 155 *Ga.* 177 (2) (116 S. E. 636); *State* v. *Camp,* 189 *Ga.* 209 (6 S. E. 2d, 299); *New Amsterdam Casualty Co.* v. *McFarley,* 191 *Ga.* 334, 337 (12 S. E. 2d, 355); 11 Am. Jur. 678, § 64; 16 C. J. S. 67, § 29. Were it permissible under controlling rules of construction to lift from the context the words thereof one at a time, and while thus isolated, attach the full meaning of each word, then it would appear that the verbiage of this clause would render void any contract or agreement which had the effect of defeating or lessening competition of every kind whatsoever, irrespective of the nature of the enterprise or the public welfare or the legitimate interest of the parties or the degree to which such competition is

either defeated or lessened. Such an interpretation would manifestly apply to all contests in athletics, in schools, in politics, and even in the church, and indeed would practically paralyze the whole scope of human relationships. But the law has wisely decreed a rule of construction which does not permit such procedure. The words of this clause under the established rule must be construed in connection with the context with which they are used. *Thompson, Lieutenant Governor,* v. *Talmadge,* supra. In the light of applicable rules of construction, is it not thus demonstrated that the clause here considered is obviously ambiguous? Since the verbiage does not limit in any respect the application of the prohibition against defeating competition, it is only by judicial construction in harmony with the established rules of law that proper limitation as to such application can be made. It is unsafe to apply to the Constitution or to statutes a literal construction in every instance. In Vol. 2, Sutherland, Statutory Construction (3rd ed.), 316, § 4502, it is said: "A word is but a symbol which may stand for one of an innumerable number of objects. It is only as custom and usage and agreement attach a particular meaning to a particular word that it has any significance in relation to either a tangible or an intangible object." So it is with the word "competition" when used as here in the Constitution. But, as pointed out in *State* v. *Central Railway Co.,* supra, the custom and usage of this word in the common law has attached to it a particular meaning. In 12 Harvard Law Review, p. 417, Mr. Justice Holmes says: "It is not true that in practice . . a given word or even a given collocation of words has one meaning and no other. A word generally has several meanings, even in the dictionary. You have to consider the sentence in which it stands to decide which of those meanings it bears in the particular case, and very likely will see that it there has a shade of significance more refined than any given in the word-book." We think that the disastrous result of a literal construction in all cases is demonstrated by Maxwell on the Interpretation of Statutes, p. 36, as follows: "If a literal meaning had been given to the laws which forbade a layman to 'lay hands' on a priest, and punished all who drew blood in the street, the layman who wounded a priest with a weapon would not have fallen within the prohibition, and the surgeon who bled

a person in the street to save his life, would have been liable to punishment." We believe that the foregoing quotations are quite sufficient to underline the vital necessity for judicial interpretation in order to effectuate and not defeat the intent of the Constitution. That there is need for judicial interpretation is enough within itself to render the law ambiguous. It necessarily follows that the clause here involved requires construction to prevent it from having effect beyond the scope ever intended. Consequently, we revert to the rule of construction first above mentioned and apply the same as being controlling here. The clause, while a part of the previous Constitution, was construed as stated in *State* v. *Central Railway Co.*, supra. It was there ruled that it was not intended to declare a new principle of law, but that the sole purpose of the clause was to declare the common-law rule against restraint of trade and monopoly. The opinion cited what is now Code § 20-504, which renders contracts in general restraint of trade void, and quotes from a number of decisions of this court construing that section and holding that it prohibits only general restraints, and that partial restraints are not thereby rendered void. It is apparent that this court considered the constitutional provision to mean precisely the same thing which the Code section has been construed to mean. It simply held that preventing competition and restraining trade were synonymous terms. In so holding, this court was in harmony with numerous decisions of other jurisdictions and the statement of this principle in 19 R. C. L., 36, § 20, which is as follows: "The distinction, however, is scarely practical, because whatever restrains trade prevents competition, and whatever prevents competition in trade necessarily restrains trade."

We have good authority for holding that in lifting this clause from the Constitution of 1877 there was no intention to cure some defect, remedy some evil, or in any manner change the existing law. See Minutes of Constitutional Commission, Vol. 1, p. 185. As ruled in *State* v. *Central Railway Co.*, supra, where the language does not indicate an intention to declare some new principle, sound construction requires that it be construed to have intended no more than merely to state the law as it existed at the time.

What, then, is the meaning which we are required by law to give this clause of the Constitution by construction? Obviously it was intended to be in harmony with the existing right to contract which is guaranteed by the 14th amendment to the Federal Constitution. In West Coast Hotel Co. *v.* Parrish, 300 U. S. 379 (1) (57 Sup. Ct. 578, 81 L. ed. 703, 108 A. L. R. 1330), it was held: "Deprivation of liberty to contract is forbidden by the Constitution if without due process of law; but restraint or regulation of this liberty, if reasonable in relation to its subject and if adopted for the protection of the community against evils menacing the health, safety, morals and welfare of the people, is due process." To the same effect see Allgeyer *v.* Louisiana, 165 U. S. 578 (17 Sup. Ct. 427, 41 L. ed. 832) ; Chicago &c. R. Co. *v.* McGuire, 219 U. S. 549 (31 Sup. Ct. 259, 55 L. ed. 328) ; Bayside Fish Co. *v.* Gentry, 297 U. S. 422 (56 Sup. Ct. 513, 80 L. ed. 772) ; Morehead *v.* N. Y. *ex rel.* Tipaldo, 298 U. S. 587 (56 Sup. Ct. 918, 80 L. ed. 1347, 103 A. L. R. 1445) ; *City of Newnan* v. *Atlanta Laundries,* 174 *Ga.* 99 (162 S. E. 497, 87 A. L. R. 507). The extent to and the purpose for which this right of contract may be abridged in order to prevent monopoly is indicated in Fowle *v.* Park, 131 U. S. 88 (9 Sup. Ct. 658, 33 L. ed. 67), where it is said: "Public welfare is first considered, and if it be not involved, and the restraint upon one party is not greater than protection to the other party requires, the contract may be sustained." It would appear that, so long as the contract does not adversely affect the interest of the public or injure the obligor beyond what is necessary to protect the legitimate rights of the obligee, it is valid under the laws of this State as they now exist. To apply this rule to individual cases it is necessary, therefore, to discover if the contract involved is reasonable in these respects. Numerous decisions of this court, applying the provisions of the Code, § 20-504, have held that such contracts when reasonable as to time and area of restrictions are not void under that section, the latest of which decisions are *Black* v. *Horowitz,* 203 *Ga.* 294 (46 S. E. 2d, 346) ; *Orkin Exterminating Co.* v. *Dewberry,* 204 *Ga.* 794 (51 S. E. 2d, 669).

■ Having ruled in the preceding division of this opinion that the new Constitution in no wise changed the law with respect to contracts which are in restraint of trade or which defeat or

lessen competition, it remains only to test the contract here involved by the applicable rules of law long followed. Mutual obligations in a contract are sufficient consideration to sustain it. Code, § 20-304. Where, as here, there has been performance of a contract of employment, its performance is sufficient to make definite the compensation payable for the services rendered, although the contract itself was indefinite in this respect, and such performance is likewise a sufficient consideration to support the ancillary restrictive agreement here sued upon. Therefore, the contract is not subject to the attack made, that it was without consideration. While the recitals in the contract as to the nature of the employer's business and the necessity for protection against use by the employee, after the employment terminated, of knowledge gained of the said business must be supported by evidence upon the trial, yet when and if so supported it will show a case which would justify the restrictions provided in the contract. Then, since the restrictions are effective for a period of only one year, they are clearly reasonable as to time, and since they apply only to those portions of the three counties where the employer's business is operated, they are reasonable as to area, and, consequently, the contract in question is but an exercise of the right to contract and does not offend any law of this State. It follows that the petition alleged a cause of action, and the court did not err in overruling the defendant's general demurrer.

*Judgment affirmed. All the Justices concur. Wyatt, J., concurs in the judgment only.*