25873.   PLANTATION PIPE LINE COMPANY et al. v.
CITY OF BREMEN.

ARGUED JUNE 8, 1970—DECIDED NOVEMBER 23, 1970.

*Howe & Murphy, Harold L. Murphy, Tisinger & Tisinger, David H. Tisinger,* for appellants.

*Tom Murphy, Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Wade V. Mallard, Jr., Robert J. Castellani, Assistant Attorneys General,* for appellee.

*Heard & Leverett, L. Clifford Adams,* amicus curiae.

UNDERCOFLER, Justice. The appellants Plantation Pipe Line Company and the Board of Education of Haralson County, the petitioners, together with the Board of Education of Carroll County, as intervenors, complain of the annexation of four tracts of land by the City of Bremen, Georgia. The annexations were accomplished by ordinances under the authority of Ga. L. 1962, p. 119 (*Code Ann.* § 69-902) and Ga. L. 1966, pp. 409, 410 (*Code Ann.* § 69-904). The Act of 1962 permits a city to annex contiguous territory when, among other things, 100% of the property owners of the affected area petition for such annexation in writing. It is known generally as the "100% method" of annexation. The Act of 1966 permits a city to annex contiguous territory when, among other things, 60% of the electors and the owners of 60% of the land area in the affected area petition for such annexation in writing. It is known generally as the "60% method" of annexation.

The City of Bremen is an independent school district and prior to the annexation ordinances was located entirely in Haralson County. The first tract annexed was contiguous to the city and was accomplished under the "100% method" on August 23, 1968. The second tract annexed was contiguous to the first and was accomplished under the "60% method" on October 7, 1968. Both of these tracts were located in Haralson County and the second one extended the City of Bremen to the Carroll County boundary. The third tract annexed was contiguous to the second and was accomplished under the "100% method" on November 1, 1968. It ex-

tended the City of Bremen into Carroll County. The fourth tract annexed was contiguous to the third and was accomplished under the "60% method" on December 31, 1968. It extended the City of Bremen further into Carroll County.

The statutes and annexation ordinances are attacked on various grounds which will be dealt with in the opinion.

The appellants also sought an injunction to prevent the collection of the 1969 taxes in the said annexed areas by the City of Bremen.

The trial court, after hearing evidence, sustained the appellee's motion to dismiss the original petition and the intervention. This appeal is from that judgment.

■ The first question presented is whether the legislative power of the General Assembly to extend city boundaries may be constitutionally delegated to the municipalities. The appellants contend that the power to extend city limits and annex territory must be exercised by the General Assembly and cannot be delegated.

The issue turns upon the meaning of the so-called Municipal Home Rule amendment to the Georgia Constitution of 1945. The amendment was ratified in 1954 and provides: "The General Assembly is authorized to provide by law for the self-government of municipalities and to that end is hereby expressly given the authority to delegate its powers so that matters pertaining to municipalities upon which, prior to the ratification of this amendment, it was necessary for the General Assembly to act, may be dealt with without the necessity of action by the General Assembly. Any powers granted as provided herein shall be exercised subject only to statutes of general application pertaining to municipalities." Art. XV, Sec. I, Par. I (Code Ann. § 2-8301). "While under well-recognized doctrines of constitutional government the legislative body of a state cannot delegate its power to make laws, it has always been an equally well-recognized doctrine that the creation of municipal corporations exercising delegated powers of local self-government does not trench upon that rule. It is well settled that it is within the power of the legislature to delegate to a municipal corporation for municipal purposes, to be exercised within the municipal limits, the three most essential branches of the legislative power of a sovereign state, namely, the police power, the

power of taxation, and the power of eminent domain, as well as powers with respect to various other matters." 37 AmJur 721, § 111. "Municipal corporations form an exception to the rule which forbids the legislature to delegate any of its powers to subordinate subdivisions." *McMahon v. Mayor &c. of Savannah,* 66 Ga. 217, 224 (42 AR 65). Therefore, it is seen that there is not an absolute prohibition against the delegation of legislative powers to a municipal corporation even in the absence of constitutional authorization. The Georgia Constitution of 1877 contained no specific authorization permitting the delegation of legislative powers to municipal corporations but on the contrary vested all legislative power in the General Assembly. Const. 1877, Art. III, Sec. I, Par. I, (*Code* § 2-1201). Nevertheless, municipal corporations were established and vested with certain legislative powers. However, the question of the constitutionality of the delegation of the legislative power to annex additional territory to municipalities had never been decided by this court prior to the Constitution of 1945.

In 1919 a full bench of six justices of this court divided evenly on the question of whether annexation of additional municipal territory was a legislative power which could not be delegated. *Bennett v. City of Baxley,* 149 Ga. 275 (99 SE 864). However, in 1953 in *Phillips v. City of Atlanta,* 210 Ga. 72, 75 (77 SE2d 723), it was said: "We wish at this time to put at rest any doubts resulting from that case [*Bennett v. City of Baxley,* supra]. Obviously, incorporating additional territory in a municipality was legislative in character and in fact, and the Constitution clearly prohibited the exercise of legislative powers by other than the General Assembly." This statement was predicated upon the Constitution of 1877 which, on this subject, contained only a provision vesting all legislative power in the General Assembly. At the time the opinion in the *Phillips* case was rendered, the Constitution of 1877 had been replaced by the Constitution of 1945. It contained the same provision vesting all legislative power in the General Assembly but it also contained the following home-rule provision: "The General Assembly shall provide for uniform systems of county and municipal government, and provide for optional plans of both, and shall provide for systems of initiative, referendum and recall in some of the plans for both county and municipal

governments. The General Assembly shall provide a method by which a county or municipality may select one of the optional uniform systems or plans or reject any or all proposed systems or plans." Const. 1945, Art. XV, Sec. I, Par. I (*Code Ann.* § 2-8301). Interpreting this 1945 constitutional provision this court said in the *Phillips* case, supra, pp. 75, 77: "What is said above would seem to demonstrate conclusively that, as the Constitution stood before it contained Art. XV, Sec. I, Par. I (*Code Ann.* § 2-8301), all legislative power reposed in the General Assembly, and this power could not be constitutionally delegated by the General Assembly. But the legislation here drawn in question (Ga. L. 1951, p. 116, as amended by Ga. L. 1952, p. 46) is expressly claimed to have constitutional basis in Art. XV, Sec. I, Par. I. It plainly undertakes to delegate to cities the power to legislate extensions of corporate limits by the procedure of initiative and referendum. The article of the Constitution relied upon unquestionably authorizes the General Assembly to delegate legislative powers to municipalities by embodying initiative, referendum, and recall in some of the systems of government which that article directs the legislature to provide. . . From what has been said it follows that that the only procedure by which power to legislate—and this includes extending corporate limits of municipalities—can be delegated by the General Assembly under Art. XV, Sec. I, Par. I, is by incorporating such delegated power in systems of government enacted by the General Assembly. Systems of government and municipal charters are synonymous."

Therefore, the *Phillips* case, supra, held that the 1945 constitutional Municipal Home Rule provision authorized the General Assembly to delegate its legislative power of annexation to municipalities but only in the manner specified in the Constitution. The statute under attack in that case was held unconstitutional because it did not provide for the specified systems of government and, therefore, was contrary to the dictates of the 1945 Constitution. For a similar holding see *DuPre v. City of Marietta,* 213 Ga. 403 (99 SE2d 156).

Immediately following the *Phillips* decision, the General Assembly proposed, and the people ratified, the constitutional amendment of 1954 which is now under review (Art. XV, Sec. I, Par. I;

*Code Ann.* § 2-8301). This amendment replaced the 1945 constitutional provision.

The 1954 constitutional amendment is clear. It authorizes the General Assembly to provide for the self-government of municipalities and expressly grants to it "the authority to delegate its powers so that matters pertaining to municipalities upon which, prior to the ratification of this amendment, it was necessary for the General Assembly to act, may be dealt with without the necessity of action by the General Assembly. Any powers granted as provided herein shall be exercised subject only to statutes of general application pertaining to municipalities."

Although it is argued that "self-government" as contained in the 1954 constitutional amendment does not encompass the power of annexation, we do not think this position is tenable. One of the most important considerations in the administration and development of a city is its orderly growth, both internally and in territorial expansion. Whether to add additional land area calls for an evaluation of the benefits and burdens of such enlargement and the resulting impact upon the financial, political and environmental structure of the city and the area to be annexed. These matters are largely of local concern and can be more appropriately determined locally. A local decision on local affairs is "self-government." As defined, it is the "control of one's or its own affairs." Webster's Third New International Dictionary.

Therefore, we conclude that the use of the phrase "self-government" in the 1954 amendment is not an expression of limitation confining the delegation of legislative powers to strictly intramural affairs. On the contrary, in view of the local nature of municipal annexation, in view of the *Phillips* case, supra, followed immediately by the 1954 constitutional amendment, and under the context of the amendment itself which expressly authorizes the General Assembly "to delegate its powers . . . pertaining to municipalities," we think it is evident that annexation comes within the purview of the constitutional amendment and the purview of "self-government" as expressed therein and we so hold.

We note that the 1954 constitutional amendment does not grant legislative powers to municipalities directly and independently of the General Assembly. It merely authorizes the General Assembly

to delegate its legislative powers to municipalities. It is not in derogation of legislative power nor does it conflict with it. The legislative power of the General Assembly is in no way impaired by the 1954 constitutional amendment and municipalities can receive and retain only such legislative power of the General Assembly as that body determines from time to time they should exercise. This is quite different from the constitutional provisions of some States which grant legislative powers directly to municipalities apart and independently of the State legislature. In these States the courts tend to place a more restrictive interpretation upon such constitutional amendments containing phrases such as "self-government" under the reasoning, as we conclude, that the people did not by such constitutional provision intend to entirely negate the powers of the State legislature over municipalities. See Schultz v. City of Upper Arlington, 88 Ohio App. 281 (97 NE2d 218); City of Cincinnati v. Rosi, 92 Ohio App. 8 (109 NE2d 290); Spence v. Watson, 182 Ore. 233 (186 P2d 785). Such is not the case in Georgia.

Disagreement may exist as to the advisability of the General Assembly delegating such legislative power to the municipalities, but, in our opinion, it unquestionably has this prerogative under the Constitution as amended in 1954.

■ The appellants contend that Section 1 of the annexation statute of 1962 (Ga. L. 1962, p. 119; *Code Ann.* § 69-902) is unconstitutional and void as applied by the City of Bremen in its annexation ordinances in that it fails to provide adequate standards and principles for determining whether or not the ordinances passed by the city pursuant to said statute are in the best interest of the residents and property owners of the area proposed for annexation and of the citizens of the municipality.

As we held in Division 1 of this opinion, the 1954 constitutional amendment authorized the delegation of the legislative power of annexation to municipalities. The very purpose of the 1962 Act in delegating a limited power of annexation to the municipalities is to permit the municipalities to make a self-determination in this regard. The Act being a mere delegation of legislative power need not contain any standards. When the municipality exercises the delegated power, it is exercising the legislative power of the General Assembly. It is limited only by the terms of the delegation

itself and by the rule that its exercise must be lawful and reasonable and not in violation of any constitutional inhibition. 37 AmJur 731, § 117.

Also, there is no merit in the contention that the statute is unconstitutionally applied because the property is not of a character suitable for annexation to the municipality. *Cash v. Town of Douglasville,* 94 Ga. 557 (20 SE 438); *Murray v. City of Waycross,* 171 Ga. 484 (4) (156 SE 38).

■ It is contended by the Haralson and Carroll County Boards of Education that they are political subdivisions of this State and that the second and fourth annexation ordinances of the City of Bremen of October 7, 1968 and December 31, 1968, are illegal and void because they do not comply with the provisions of Ga. L. 1966, pp. 409, 410 (*Code Ann.* § 69-904).

Section 1 of the 1966 Act provides in part: "Authority is hereby granted to the governing bodies of the several incorporated municipalities of this State to annex to the existing corporate limits thereof unincorporated areas which are contiguous to the existing corporate limits at the time of such annexation, upon the written and signed application of not less than sixty percent (60%) of the electors resident in the area included in any such application and of the owners of not less than sixty percent (60%) of the land area, by acreage, included in such application." *Code Ann.* § 69-904.

Section 5 of the 1966 Act provides in part: "Provided there shall be no annexation across the boundary lines of any political subdivision under the provisions of this Act." *Code Ann.* § 69-908.

It is well established in this State that a school district is a political subdivision thereof. *Ty Ty Consolidated School District v. Colquitt Lumber Co.,* 153 Ga. 426 (112 SE 561); *Jennings v. New Bronwood School District,* 156 Ga. 15 (2a) (118 SE 560); *Seaboard A. L. R. Co. v. Wright,* 165 Ga. 367 (140 SE 863); *Campbell v. Red Bud Consolidated School District,* 186 Ga. 541 (198 SE 225); *Towns v. Suttles,* 208 Ga. 838, 840 (69 SE2d 742); *Cotton States Mut. Ins. Co. v. Keefe,* 215 Ga. 830 (113 SE2d 774).

Art. VIII, Sec. V, Par. I of the Constitution of 1945 provides: "Each county, exclusive of any independent school system now in existence in a county, shall compose one school district and shall

be confined to the control and management of a county board of education." *Code Ann.* §§ 2-6801, 32-901, 32-1101.

The cardinal rule in the construction of legislative enactments is to ascertain the true intention of the General Assembly in the passage of the law. *Gazan v. Heery,* 183 Ga. 30 (187 SE 371, 106 ALR 498). All statutes are presumed to be enacted by the General Assembly with full knowledge of the existing condition of the law and with reference to it, and are therefore to be construed in connection and in harmony with the existing law, and as a part of a general and uniform system of jurisprudence, and their meaning and effect is to be determined in connection, not only with the common law and the Constitution, but also with reference to other statutes and decisions of the courts. *Botts v. Southeastern Pipeline Co.,* 190 Ga. 689 (10 SE2d 375); *Nelson v. Roberts,* 217 Ga. 613 (124 SE2d 85); and *Buice v. Dixon,* 223 Ga. 645 (157 SE2d 481).

We hold therefore that the General Assembly included school districts when it provided in the 1966 Act that "there shall be no annexation across the boundary lines of any political subdivision under the provisions of this law." The record shows that the City of Bremen, Georgia, contains an independent school system. Therefore, when the second and fourth annexation ordinances of October 7, 1968, and December 31, 1968, were passed, they attempted to annex to the City of Bremen territory of other political subdivisions, the Haralson County School District and the Carroll County School District.

It follows that these ordinances are illegal and void because they violate the provisions of the Act of 1966 prohibiting the annexation of territory across the boundary lines of political subdivisions. See *Jones v. City of College Park,* 223 Ga. 778 (158 SE2d 384).

The City of Bremen therefore could not levy and collect taxes in the areas annexed by the second and fourth ordinances of October 7, 1968, and December 31, 1968.

Under the express provisions of the Act of 1966, the Boards of Education of Haralson and Carroll Counties do not come within the category of persons barred from attacking the ordinances after 30 days. Ga. L. 1966, pp. 409, 413 (*Code Ann.* § 69-912).

■ We have held in the previous division of this opinion that the second ordinance of ·October 7, 1968, is illegal and void. Therefore, when the third annexation ordinance of November 1, 1968, was passed, the area involved therein was not contiguous to the existing corporate limits of the City of Bremen as provided by the Act of 1962 (Ga. L. 1962, p. 119; *Code Ann.* § 69-902). For this reason, we hold that the third annexation ordinance of November 1, 1968, is illegal and void and that the City of Bremen had no authority to levy and collect taxes in this area.

■ The first annexation ordinance of August 23, 1968, under the "100% method" of annexation is not invalid under the attacks made by the appellants.

■ Since we have held in the previous divisions of this opinion that the ordinances of the City of Bremen annexing territory under the "60% method" are illegal and void, the appellants have no standing to attack the constitutionality of the 1966 Act of the General Assembly providing for such method of annexation. *South Ga. Natural Gas Co. v. Ga. Public Service Commn.,* 214 Ga. 174 (104 SE2d 97); *Barrett v. Barrett,* 215 Ga. 697 (113 SE2d 118).

■ For the reasons given in this opinion the trial court erred in sustaining the motion to dismiss the petition and the intervention.

*Judgment reversed. All the Justices concur, except Almand, C. J., Nichols, Felton, and Hawes, JJ., who concur in the judgment of reversal. Nichols and Hawes, JJ., dissent from the rulings made in Divisions 1 and 5.*

ALMAND, Chief Justice, concurring specially. I concur in the judgment. The 1962 and 1966 Acts (Ga. L. 1962, p. 119; Ga. L. 1966, p. 409) provide for the methods of annexation of adjacent territory by a municipality. These Acts state that where the ordinance annexing such territory has been adopted, a certified copy of such ordinance shall be filed with the Secretary of State. This court takes judicial notice of such records in the office of the Secretary of State. *Code* § 38-112.

In the amicus curiae brief of the Georgia Municipal Association, Inc., it is stated, "that at least ninety-one municipalities have annexed approximately five hundred separate tracts of land to

their respective boundaries" under the authority of these two legislative Acts.

There is a Latin maxim, "argumentum ab inconvenienti." This maxim calls for the taking into consideration of the inconvenience which the proposed construction of the law would create. The doctrine has been recognized by this court in several cases. In *Gormley v. Taylor,* 44 Ga. 76, Chief Justice Lochrane, in a concurring opinion said, "Now, before going further, let us glance at the consequences of this decision. I am not unaware that ordinarily courts have nothing to do with questions of public policy, or the entailment of consequences. No man better understands the necessity of lifting the judiciary above the popular prejudices or sympathies than myself. But while in the language of Lord Mansfield, 'We have nothing to do with consequences; if certain rebellions were the result, we cannot prevaricate with our consciences or our God; all we have to say is, fiat justitia ruat coelum'; yet with all judges, consequences must needs influence consideration. We should pause upon the enunciation of legal judgments whose effect would be to upset society, and turn loose chaos over the land." P. 99.

In *Macon & Augusta R. Co. v. Little,* 45 Ga. 370, 380, Judge Montgomery, speaking for the majority, said, "Two principles, applicable to the present case, are deducible from *Solomon v. The Commissioners of Cartersville*—first, a decision by a co-ordinate department of government, upon a question legitimately within its sphere, will have great weight with this court in sustaining the constitutionality of an Act attacked as void, because not properly acted upon by that very department. Secondly, the argumentum ab inconvenienti will be strained to its utmost limits to sustain Acts of the legislature, to declare which void might produce very serious consequences to the State. The principles laid down in that case apply with much greater force to the present; here we have the decision of the three departments of the State government that the body of Acts passed in 1870 are valid, to wit: the legislative, the executive and the decision of this court in *Gormley v. Taylor,* decided September 5th, 1871, besides a concurrence in their validity by a subsequent executive and legislature, which

has amended, repealed and refused to repeal, many of the Acts of 1870—the repeal of the one now under review being expressly attempted, and failing of success. Again, the consequences which might have resulted from declaring all Acts signed by the governor after the adjournment of the legislature invalid, sink into insignificance when compared with those which might follow a decision that the entire body of laws of 1870 should be stricken from the statute book. The power of a court to destroy is tremendous—it cannot rebuild. It should, therefore, approach with great circumspection and caution the investigation of a question in which it is called upon to sweep out of existence, at one blow, more than a hundred laws."

In *Calhoun County v. Early County,* 205 Ga. 169, 175 (52 SE2d 854), this court said, "The Constitution is the fundamental law, and where an Act is clearly and plainly in violation thereof it is the duty of this court so to determine irrespective of the consequences. Where the constitutionality of an Act is concerned, it is only when the question is close and doubtful that the doctrine of argumentum ab inconvenienti will be applied, and consideration be taken of consequences. As stated in the first division of this opinion, the Act here in question is clearly and plainly in violation of the Constitution, and therefore this doctrine is not applicable." See *Norris v. McDaniel,* 207 Ga. 232 (60 SE2d 329), the concurring opinion of Presiding Justice Atkinson.

The words of Chief Justice Hughes in Chicot County Drainage District v. Baxter State Bank, 308 U. S. 371 (60 SC 317, 84 LE 329), are timely and applicable in this case. "The courts below have proceeded on the theory that the Act of Congress, having been found to be unconstitutional, was not a law; that it was inoperative, conferring no rights and imposing no duties, and hence affording no basis for the challenged decree. Norton v. Shelby County, 118 U. S. 425, 442 [6 SC 1121, 30 LE 178]; Chicago, I. & L. Ry. Co. v. Hackett, 228 U. S. 559, 566 [33 SC 581, 57 LE 966]. It is quite clear, however, that such broad statements as to the effect of a determination of unconstitutionality must be taken with qualifications. The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased

by a new judicial declaration. The effect of the subsequent ruling as to invalidity may have to be considered in various aspects,— with respect to particular relations, individual and corporate, and particular conduct, private and official. Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application, demand examination. These questions are among the most difficult of those which have engaged the attention of courts, state and federal, and it is manifest from numerous decisions that an all-inclusive statement of a principle of absolute retroactive invalidity cannot be justified."

On the faith of these two Acts, many municipalities in Georgia have annexed adjacent territories. Rights, obligations and duties have been imposed or incurred. To declare these two Acts unconstitutional would cast a serious shadow of doubt on the validity of these prior annexations. I am unwilling to create, by a decision of this court, a condition of inconvenience and even chaos. Such a condition would follow if we held these two Acts to be null and void as of the date of their passage.

FELTON, Justice, concurring specially in the rulings in Divisions 1 and 2 for the reason that in this case no delegation of legislative authority is involved but only the exercise of such authority.

The legislature is vested with the power to enlarge the territorial limits of municipal corporations, except as limited by statutory provisions against crossing and invading the territory of other political subdivisions of the State. Within these limits the legislature can enlarge city limits, without the aid of any constitutional amendment, within the prescribed limitations, by simply passing an Act to enlarge them, without any say-so on the part of the municipalities or any part of the inhabitants thereof or on the part of the citizens of the enlarged territory. If the legislature so desires it may give to municipalities the power to do what the legislature could have done as to separate municipalities, provided it provides *in the legislation the terms and conditions* under which the municipalities may enlarge the city limits. When cities comply with such uniform requirements it is the same as if the legislature had enacted separate Acts providing for the enlargement of

each individual city acting under the legislative authority. "[I]t is permissible for the legislature to attach a referendum to its enactment and provide that it shall become effective only after receiving a favorable vote in the referendum. Such is not a delegation of legislative power, *but is simply an exercise of that power,* guided by the will of the people to be affected." (Emphasis supplied.) *Phillips v. City of Atlanta,* 210 Ga. 72, 75 (77 SE2d 723), citing *White v. City of Atlanta,* 134 Ga. 532 (5) (68 SE 103).

The main opinion seeks to justify the legislation in this case which the majority holds is legal by an interpretation of the constitutional amendment of 1954. I do not think that the question whether the legislature has the right to delegate to the municipalities the legislative power which before the amendment of 1954 was passed did not exist is in this case. We have in this case *not a delegation of such power* but only the *exercise* of such power. When the legislature authorizes the enlargements of municipal territorial limits by the method of referendum it is the *exercise* of the *authority* to annex and not a delegation of legislative power to municipalities to annex. There is no distinction between the legislature's authorizing an annexation by referendum involving one municipality and the situation where the legislature passes a uniform Act providing that any municipality may annex territory where 100 percent of the persons described in the Act vote in favor of the annexation—the same as to the 60 percent method. When the *terms* and *conditions* of the general and uniform Act are complied with it is annexation by referendum pure and simple. The fact that the referendum in the former method (where municipalities were dealt with separately) came after the legislature provided the specific authority containing the uniform terms and conditions makes no difference since the determination whether a municipality under the uniform law gets the authority depends on whether the referendum, the first initiation of the annexation effort, comes first. Annexation by referendum is the same whichever way it is accomplished. Even if it can be said that the methods are not identical, "things equal to the same thing equal each other" and I cannot understand why one would be an exercise of legislative power and the other a delegation. I cannot concur in the reasons for the majority opinion in Divisions

1 and 2. The fact that the legislature enacted the standards, terms and conditions (which the main opinion says are not required) insures the conclusion that the annexations authorized are exercises of legislative power and not delegation.

HAWES, Justice, dissenting. While I concur in the judgment of reversal in this case, I do so upon firm conviction that the decision of the majority in Division 1 of the opinion and the conclusion reached therein are erroneous, and that the legislature, under the 1954 amendment to the Constitution, has no authority to delegate its legislative powers as respects the annexation of territory by municipal corporations.

Division 1 of the majority opinion is predicated upon the analysis therein made of the case of *Phillips v. City of Atlanta,* 210 Ga. 72 (77 SE2d 723). The legislation drawn in question in that case was section 3 (j) of the so-called Municipal Home Rule Act of 1951 (Ga. L. 1951, pp. 116, 121-123). I submit that that Act bears no resemblance to the Acts which are here drawn in question and that the ruling of this court in the *Phillips* case, which was less than a full bench decision has no bearing on the question here presented in the light of the later full bench decision of this court in *DuPre v. City of Marietta,* 213 Ga. 403 (99 SE2d 156). In that case, the constitutionality of the Act approved January 31, 1946 (Ga. L. 1946. pp. 130-131; *Code Ann.* § 69-901) was under consideration, and that Act was therein declared to be void as being an unauthorized delegation of the legislative power reposed by the Constitution in the General Assembly. I submit that a careful comparison of the provisions of the 1946 Act (*Code Ann.* § 69-901) with the 1962 Act (*Code Ann.* §§ 69-902 and 69-903), the so-called 100-percent method under which two of the annexations here in question were sought to be accomplished, and the 1966 Act (*Code Ann.* § 69-904 et seq.), the so-called 60-percent method under which the other two annexations here in question were sought to be accomplished, will show that while the latter two Acts set out more of the details as to how annexations are to be accomplished thereunder, they embody substantially the identical scheme as that employed by the earlier Act and that under the full bench decision of this court in *DuPre* the 1962 and the 1966 Acts must fall unless authority to delegate to municipalities the legislative

function of annexing territories is clearly embodied in the provisions of the constitutional amendment ratified on November 2, 1954.

That amendment reads: "The General Assembly is authorized to provide by law for the *self-government* of municipalities and to *that end* is hereby expressly given the authority to delegate its power so that matters pertaining to municipalities upon which, prior to the ratification of this amendment, it was necessary for the General Assembly to act, may be dealt with without the necessity of action by the General Assembly. Any powers granted as provided herein shall be exercised subject only to statutes of general application pertaining to municipalities." Constitution, Art. XV, Sec. I, Par. I (*Code Ann.* § 2-8301). (Emphasis supplied). As I read this amendment its language is unambiguous and therefore it is not subject to judicial construction. *Griffin v. Vandegriff,* 205 Ga. 288, 291 (53 SE2d 345). Therefore, let us look to its language, and by an analysis thereof, determine its meaning, scope and effect on existing law. By virtue of this amendment, what authority does the legislature have to delegate its legislative powers to municipalities? In the first clause, it is authorized to provide by law for the *self-government* of municipalities. All that follows thereafter is merely explanatory of that clause. "To that end," that is, to the end of providing for the *self-government* of municipalities, the legislature is given authority to delegate its legislative powers. Does self-government include authority to take in or to incorporate into a municipality territory which is not a part of the municipality? I think not.

No Georgia case defining "local self-government" or the simple term "self-government" has been called to my attention by counsel for any of the parties, nor have I found one. A number of decisions of the courts of last resort in other jurisdictions are collected in McQuillin, Municipal Corporations (3d Ed.), Vol. 2, p. 309 et seq., § 7.10 et seq. Those decisions, however, are not numerous, nor are they necessarily all in accord. Some turn on differing constitutional provisions. However, the conclusion which I reach is supported by reason and respectable authority. The power of self-government possessed by a governmental body, whether inherent or derived from delegated authority is the power to control the

internal affairs of the governmental unit. Anything that relates to the management of the internal affairs of an existing municipality is a matter of local self-government. But, "Matters involving annexation of territory to a municipal corporation are not purely local matters and, therefore, are not proper functions of local self-government; such matters are of a general nature and state-wide in their scope." Schultz v. City of Upper Arlington, 88 Ohio App. 281 (97 NE2d 218). The exercise of the power of annexation, it sometimes is said, relates to matters not merely internal to the municipal corporation, but extramural. Such matters are of concern to the entire State, and are not a proper function of local self-government. City of Cincinnati v. Rosi, 92 Ohio App. 8 (109 NE2d 290); Spence v. Watson, 182 Ore. 233 (186 P2d 785). While the annexation of additional territory to an existing municipality does not thereby create a new city, after the annexation is accomplished the city thus enlarged is certainly a different entity from that which existed before annexation. And, the people who, through the process of petitioning and being taken into the city by ordinance become, at the completion of the process citizens of the municipality, cannot be said to have exercised any function of municipal self-government, because under the statutes here in question they are not citizens of any municipality at the time they petition to be taken in. Following this reasoning and the authorities cited, I would hold that the authority granted to the legislature by the 1954 amendment to the Constitution to provide by law for the self-government of municipalities cannot be construed as authorizing the legislature to provide by law for the annexation of territory by the unilateral action of municipalities or even upon the petition or referendum of the voters or landowners in the territories to be annexed.

I would, therefore, hold that the Acts of the legislature of 1962 and of 1966 under which the attempted annexations of territory by the City of Bremen were undertaken in this case are unconstitutional and void and constitute no authority to the City of Bremen to pass the ordinances in question.

Under such a ruling, it would be unnecessary to pass upon or to consider any other question presented by the appeal. While I do not disagree with the reasoning and the rulings made in Divisions

2 through 4 and Division 6 of the opinion, under the view which I take they are unnecessary to a proper decision in this case. I, therefore, concur in the judgment of reversal but only for the reasons set forth herein, and dissent from the rulings made in Divisions 1 and 5 of the opinion.

I am authorized to state that Justice Nichols concurs in the foregoing dissent.