26334, 26335.   KEN STANTON MUSIC, INC. v.
BOARD OF EDUCATION OF THE CITY OF ROME
et al.; and vice versa.

ARGUED FEBRUARY 8, 1971—DECIDED MARCH 4, 1971—
REHEARING DENIED MARCH 18, 1971.

*Matthews, Walton, Smith, Shaw & Maddox, James D. Maddox, John M. Graham, III,* for appellant.

*Wright, Walther & Morgan, Henry J. Fullbright, Jr., Robert Walther,* for appellees.

ALMAND, Chief Justice. Ken Stanton Music, Inc., the owner and operator of a retail store for the sale and rental of musical instruments and related items in the City of Rome, brought its equitable complaint in two counts against the Board of Education of the City of Rome, the members of the board, and Music Room, Inc., seeking to enjoin the defendants from continuing certain described procedures and agreements.

The complaint, in substance, alleged that in September, 1969,

the defendant board established a procedure whereby, to the exclusion of all other band instrument sales organizations, only one such band instrument sales organization would be allowed to present to the students and parents, a program to introduce the band program and to acquaint them with the various types of musical instruments available and used in a band program. On October 13, 1969, on the basis outlined in the band recruitment program, the defendant board approved an arrangement whereby the defendant Music Room, Inc., was selected by the "Band Advisory Committee as the one band instrument sales organization," to assist in the band recruitment program for the 1969-70 school year. The board reaffirmed this policy in August, 1970. It further alleged that this policy or procedure of selecting one band instrument sales organization was contrary to law and public policy of the State in that it created an exclusive privilege or monopoly contrary to: (a) Art. IV, Sec. IV, Par. I (*Code Ann.* § 2-2701) of the Georgia Constitution; (b) *Code Ann.* § 20-504 ("A contract which is against the policy of the law cannot be enforced"); and (c) Ga. L. 1968, pp. 1249, 1308 (*Code Ann.* § 26-2308 (b)): ("A person who enters into a contract, combination, or conspiracy in restraint of trade or in restraint of free and open competition in any transaction with a political subdivision" is guilty of a felony).

In the second count of the complaint, it was alleged that the defendant board had entered into an agreement with the defendant Music Room, Inc., whereby the schools in the Rome system accept commissions from Music Room, Inc., in the form of basic equipment to the individual schools based upon a percentage of sales to individual students and parents in the schools. It was alleged that this practice was contrary to law and public policy, violating *Code Ann.* § 26-2301 (Bribery).

It was alleged that the plaintiff had protested to the defendant board to stop the aforesaid practices and procedures, which protest was denied; that the plaintiff then appealed the defendant board's decision to the State Board of Education which affirmed the decision of the local board; and that the plaintiff had thereby exhausted its remedy of appeal.

The defendants, in their answers, denied all the material allegations in the complaint.

After a hearing, the court denied the Board of Education's plea of res judicata and denied the plaintiff's prayer for an interlocutory injunction.

The plaintiff has appealed from the order denying its prayer for an interlocutory injunction, and the defendant board of education, by cross appeal, assigns error on the order denying its plea of res judicata.

■ The defendant board of education asserts that the appellant, not having appealed from the decision of the State Board of Education rendered on July 15, 1970, by certiorari, it became bound and the present action against the board in equity would not lie.

This court has consistently held that where a party complains of an adverse ruling by a local board of education, he must exhaust his administrative remedy of appeal to the State Board of Education as provided by Georgia Laws 1919, pp. 288-324 as amended (*Code Ann.* § 32-910), and if the decision is adverse to him he may resort to equity to enjoin the local board upon the grounds that the local board grossly abused its discretion or acted in violation of the law. *Keever v. Board of Education,* 188 Ga. 299, 302 (3 SE2d 886); *Bedingfield v. Parkerson,* 212 Ga. 654, 661 (94 SE2d 714). The decision of the State Board of Education under the allegation in the complaint did not bar the plaintiff from resorting to equity.

■ Under the charter of the City of Rome the city commission is empowered to provide for appropriate agencies to regulate, supervise and carry on a system of public schools and to render them efficient, and the board of education shall have supervision and control over said public schools in accordance with the provisions of the charter. (Ga. L. 1918, p. 813, Sec. 83-87).

In 1969, the defendant board issued a statement outlining its band recruitment procedures for the 1969-70 school year. Each band director would do the preliminary testing to determine which 6th grade student appeared to have the musical aptitude necessary for satisfactory performance on a band instrument; a general meeting of those students showing some aptitude would be held with their parents and a representative from one band instrument sales organization who would assist in presenting a program "which will introduce the band program to the students and par-

ents and which will acquaint them with the various types of musical instruments available and used in a band program." The one band instrument sales organization assisting in the program would be selected by a committee composed of two band directors, two parents, two school principals and the superintendent or assistant superintendent of schools. Information on available instruments, prices, make, instalment plans, etc., would be given to the parents at this general meeting. The manner of selecting the one band sales organization was outlined and such organizations were invited to appear before this Band Advisory Committee on the stated day and time to present its proposed band service for consideration.

The evidence discloses that the plaintiff was invited to submit its program and plan, but it declined on the ground that its participation would be contrary to law and public policy.

The plaintiff (appellant) contends that this procedure is illegal and contrary to the Constitution and laws of the State declaring void all contracts and agreements having the effect or intended to have the effect, to defeat or lessen competition or to encourage a monopoly and in restraint of trade.

This court in *Griffin v. Vandegriff,* 205 Ga. 288, 294 (53 SE2d 345) in construing this provision of our Constitution (Art. IV, Sec. IV, Par. I) dealing with monopolies, said: "What, then, is the meaning which we are required by law to give this clause of the Constitution by construction? Obviously it was intended to be in harmony with the existing right to contract which is guaranteed by the 14th Amendment to the Federal Constitution. In West Coast Hotel Co. v. Parrish, 300 U. S. 379 (1), (57 SC 578, 81 LE 703, 108 ALR 1330), it was held: 'Deprivation of liberty to contract is forbidden by the Constitution if without due process of law; but restraint or regulation of this liberty, if reasonable in relation to its subject and if adopted for the protection of the community against evils menacing the health, safety, morals and welfare of the people, is due process.' [Cits.] The extent to and the purpose for which this right of contract may be abridged in order to prevent monopoly is indicated in Fowle v. Park, 131 U. S. 88 (9 SC 658, 33 LE 67), where it is said: 'Public welfare is first considered, and if it be not involved, and the restraint upon one party is

not greater than protection to the other party requires, the contract may be sustained.' It would appear that, so long as the contract does not adversely affect the interest of the public or injure the obligor beyond what is necessary to protect the legitimate rights of the obligee, it is valid under the laws of this State as they now exist." Black's Law Dictionary defines "monopoly" as: "A privilege or peculiar advantage vested in one or more persons or companies, consisting in the exclusive right (or power) to carry on a particular business or trade, manufacture a particular article, or control the sale of the whole supply of a particular commodity."

In *Davison-Nicholson Co. v. Pound,* 147 Ga. 447 (4) (94 SE 560) this court affirmed an order refusing to enjoin the Board of Trustees of the State Normal School from pursuing a procedure and regulation requiring uniforms to be furnished by the individual students. The board of trustees delegated to the president of the school the authority to advertise for bids for the furnishing of uniforms to the students. The uniforms required could be bought from the accepted bidder, or from any other seller according to the individual preference of the student. The plaintiff contended that: "The president of the school has refused and still refuses to accept the bid submitted by the plaintiff to furnish uniforms to the student body of the institution, has refused and still refuses to permit it to go upon the campus of said institution for the purpose of selling and offering for sale its goods and merchandise, and is exercising his influence as such president to induce the members of the student body to purchase uniforms from merchants other than plaintiff, and not from plaintiff."

This court there held that, "the right to protect a public educational institution and its student body is equal to or superior to the right of one, as a merchant, desiring to deal with such institution or its students, and a wide discretion is necessarily vested in its governing board to determine the conditions on which such person may deal with the institution or student body; and if this discretion is exercised in good faith, there will, in general, according to respectable authority, be no liability to one with whom the students have been forbidden to deal."

There was evidence that nothing was said to the parents of the students participating in the band tests as to any band instrument

dealer they should buy or rent band instruments from, nor was any music dealer given a list of students showing musical aptitude.

The evidence was insufficient to show that the method in which the defendant board, in engaging a single band instrument organization to conduct the band recruitment program, violated the laws relating to monopolies or in restraint of trade.

■ The second count of the complaint complains that the acceptance by the city school system of commissions from The Music Room, Inc., in the form of basic equipment to the individual schools based upon the percentage of sales to individual students was illegal.

There was testimony by the president of Music Room, Inc., of its policy of giving credits and donations to city schools. There was no set agreement or understanding with any school that they would make any gifts. The donations were based upon the percentage of sales or rentals to the individual parents, but not related to sales to the school system or sales of instruments bought by parent organizations.

The record shows that the superintendent of the city schools in 1969 issued a directive to the band directors as follows: "After discussion the Rome Board of Education reaffirmed its policy that the Board of Education and all subdivisions of the school system would give all Rome merchants a fair and equitable opportunity to share in such business as was available through school activities. Competitive bidding should be held on the acquisition of all school purchased instruments. Any invitation made to any firm to test, demonstrate or display instruments within the schools or on school premises should be open to all firms handling musical instruments. The Board of Education expects all employees to demonstrate fairness in every case, to competing firms, but also expects each firm to display fairness in salesmanship and competitive bidding. There will be *no sharing of business* unless the business firms submit equal bids and services. Low bids will be accepted unless services or ethical practices from a competing firm are unacceptable. In case of unethical practices the firm will not be allowed to bid or participate in any school business.

"Rebates to band directors, personally, or to any other school

personnel, will be considered as unethical practices. Percentage discounts to the schools for volume purchases are considered as standard business practice and are acceptable and will be considered as a part of a bid on the purchase of school instruments."

Art. VIII, Sec. XI, Par. II of the Constitution (*Code Ann.* § 2-7402) authorizes the defendant board to accept donations for use in school systems. See also *Code* § 32-909.

We find the complaint in Count 2 to be without merit.

■ It not being shown that the defendant board's action was in violation of any law, nor was a gross abuse of its discretion, the trial court did not err in denying an interlocutory injunction.

*Judgment affirmed on the main appeal and on the cross appeal. All the Justices concur.*